MISSOURI RIVER, FORT SCOTT & GULF R. R. CO. v. C. A. MORRIS, *et al.*

1. RAILROAD PROPERTY—*Assessment and Taxation of—Ch.* 124, *Laws of* 1869, *is valid.* Chapter 124 of the Laws of 1869, or so much of it as provides for the assessment of railroad property by a Board of County Clerks, and that the entire road shall be assessed as a whole and apportioned to the different counties, townships, etc., through which the road runs, is not unconstitutional and void.

2. ASSESSMENT, *not vitiated by irregularities.* Irregularities in the assessment made by the county clerks acting as a board, or acting separately under other statutes, will not render the taxes founded upon such assessment void.

3. COUNTY CLERK—*Deputy.* A deputy county clerk, in the absence of his principal, may act as one of the "board of appraisers and assessors" to assess railroad property, as provided by Chapter 124 of the Laws of 1869. (Affirming *Amrine, et al., v. K. P. R. R. Co., ante,* 178.)

4. EQUITY—*Injunction—Taxes.* A court of equity will not set aside such a tax, nor grant an injunction to restrain its collection, unless its collection would be inequitable and unjust; and the party seeking such a remedy must be prepared to do equity.

*Error from Bourbon District Court.*

PETITION for an injunction against *Morris,* as county treasurer, and *Wheaton,* as sheriff. Prior to the first day of March, 1870, the plaintiff, the *Missouri River, Fort Scott & Gulf Railroad Company,* had completed its track and roadway from Kansas City, Missouri, through the counties of Wyandotte, Johnson, Miami, Linn, and Bourbon, and to Girard, in the county of Crawford, in the State of Kansas, and was operating the same. The whole length of the road from Kansas City to Girard, (including 2.32 miles of side-track,) is 129 67-100 miles; of which 5½ miles are in Missouri, and 126.17 miles are in Kansas. About the first of March the Auditor of the

State of Kansas gave said Railroad Company notice that "the county clerks of Wyandotte and Johnson counties" would meet at Olathe on the 23d of March for "the purpose of assessing" the property of said Company "according to law." At the time and place designated the county clerks of the two counties named did not meet by themselves, but they did meet in conjunction with the county clerks of Linn and Bourbon counties, and the deputy county clerk of Miami county, and the five officers so assembled organized as a board of assessors to assess the property of said Railroad Company, for taxation, as provided by ch. 124, laws of 1869. The agent and attorney of the Railroad Company filed a protest against said board taking any action whatever, as a board of assessors, because no notice of the meeting of such board had been given to said company; because, if the board were to convene as such, under the act of March 4, 1869, (ch. 124,) the county of Crawford should be notified, and be represented by her county clerk, and because the deputy county clerk of Miami county was not a legal member of said board. The board however proceeded to make a valuation and assessment of the property of the plaintiff, and agreed to assess the road-bed and right of way, including rolling stock, at $11,628.36 per mile. That portion of the road, including side-tracks, lying in Bourbon county, is 27.55 miles in length, which, at said valuation of $11,628.36 per mile, with the sum of 11,900 for depot grounds and stations, made the total assessment of plaintiff's property in said county, $332,261, which was duly certified to the county clerk of said county.

Upon said assessment of the property of the plaintiff, the proper amounts of State, county, town, school, city, and other local taxes were levied and apportioned, amounting in the aggregate to the sum of $13,648.37.

Plaintiffs refused to pay the taxes so levied; whereupon, after the 10th of January, 1871, *Charles A. Morris, county treasurer*, issued his warrant, as directed by §123, ch. 107, Gen. Stat., for the collection thereof, and was about to place the same in the hands of *C. S. Wheaton*, sheriff of Bourbon county, when said Railroad Company, as plaintiff, commenced an action in the district court to restrain the collection of said taxes. Plaintiff applied to the district judge to grant a temporary injunction. Said motion was heard by the district court, due notice thereof being given. The defendants appeared and resisted the motion, and said application for a temporary injunction was overruled and denied. Plaintiff excepted; and said order denying said motion is assigned for error, and plaintiff brings the case here for review.

*Wallace Pratt*, and *C. W. Blair*, for plaintiff in error:

1. *Is ch. 124, Laws of 1869, constitutional?* While the power of taxation is one of the attributes of the sovereignty of the State, and one to be exercised by the legislature to an almost unlimited extent, yet there are certain fundamental rules, the non-observance of which by the legislature, in the exercise of this power, may cause the burden to be so oppressive upon the subject, as to render it not a tax, but an unlawful confiscation of property. Among these rules, and the most important of all, is that requiring taxation to be equal and uniform. The State of Kansas has incorporated in its constitution this fundamental principle in the following apt and concise language: "The Legislature shall provide for a uniform and equal rate of assessment and taxation." Const., Art. 11, § 1.

"Assessment upon real estate not lying within the taxing districts would be void, and assessments for per-

sonal property, made against persons not residing in the district, would also be void, unless made with reference to the actual presence of the property in such district." Cooley on Const. Lim., 566.

The residence of a private corporation is in the town where its principal office is located. A. & A. on Corp., 8th ed., § 107; *Conn. and Pass. Riv. Ry. v. Cooper*, 30 Ver., 467. 2 Redf. on Railways, 382.

In examining the provisions of chapter 124 above referred to, we find the this fundamental rule of taxation has been in part ignored. §§ 2, 3, 6. A new and distinct board or tribunal is created for assessing this particular class of property; the real property, track, road-bed, water and fuel stations, buildings, etc., are to be assessed as *personal* property, and assessed as such " *together* with the moneys, credits," etc., of the company, and the whole to be apportioned among the several counties, giving to each such a proportion as the value of the property in that county bears to the whole in the State; and apportioning the rolling stock according to the number of miles of road in such county, notwithstanding portions of such rolling stock, such as yard and switch engines, may never have been in the county.

The plaintiff has nearly 157 miles of railroad in this State, and about three miles in the State of Missouri. Kansas City, in Mo., is the northern terminus of the road, and there it has its machine shops, main depots, materials and supplies, and a large and valuable property connected with its road. Suppose, for instance, that the machinery, materials and supplies, stationary motive-power, money, credits and effects, depot buildings and other personal property of the plaintiff at Kansas City, (leaving out of the question the possibly greater value of the real estate over that in Kansas,) be valued at $160,-

000, then, under the provisions of § 8, above quoted, $157,000 of this amount would be apportioned to the State of Kansas for the purpose of taxation, and $3,000 left to be taxed by the State of Missouri.

This is a fair illustration of the practical working and effect of this law, and shows conclusively that it violates the rule of uniformity above stated, and hence is unconstitutional and void.

"Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the *mode of the assessment as well as in the rate of taxation.*"   *Ex. Bk. of Columbus v. Hines*, 3 Ohio St., 1, 15.

Again; under the general tax law, real property of individuals is assessed and taxed as such, and an appeal or review may be had before a "board of equalizers." Under this act of 1869, real property is assessed as personalty, and an appeal was provided by § 11 to the Supreme Court.   This court in *Auditor of State v. A., T., & S. F. R. R. Co.*, 6 Kas., 500, adjudged said § 11 to be void; hence, the equivalent for a "board of equalization" having failed, the rule intended to be prescribed certainly wants uniformity in its operation.

2. Was the tax in question legally levied and assessed according to the provisions of said chap. 124, assuming said act to be constitutional ?

An assessment and a valuation being essential requirements, the statute must be strictly pursued in making them, or the proceedings based upon them will be illegal and void.   Black. on Tax Titles, 106, 153.

No notice was ever given to the plaintiff of the time and place of the meeting of the Board of Appraisers and Assessors, as is required by § 4; nor to the county clerk of Crawford county.

The board was also improperly and illegally organized by the admission of the *deputy* clerk of Miami county, as one of the members of the board, and by his taking part in their proceedings and determinations. The statute creates a new office, to-wit, the office of "railroad assessor," and provides that the county clerk for the time being shall be such assessor. A deputy county clerk may act as "county clerk," in the absence of his principal, but he can no more act as "railroad assessor," in virtue of his "deputyship" than he could act as township trustee if his principal were chosen to such office, and should be absent from his township.

Nor is it any answer to this objection, to say that there was a quorum of county clerks present, without this *deputy*. If he had no right to sit and act with them, then he was an interloper, and the action of the board is a nullity. His vote and influence may have been the cause of the unjust and excessive valuation of the property of the plaintiff, and if *one* deputy can sit and act with the board, then why cannot the entire board be composed of deputies?

3. Can this action be maintained for the purpose of adjudicating the questions raised by the plaintiff in error? "Where power to levy the tax exists, but the proceeding to collect it is illegal, the exercise of a speedy restraining power furnishes the State with notice of the illegality, and enables the government to re-assess the tax, and enforce the collection in a legal manner. If, on the contrary, *the tax itself is illegal*, the State has no right to harrass her citizens by proceedings to enforce its collection." Black. on Tax Titles, 2d Ed., p. 481 *et seq.; Burnett v. Cincinnati*, 3 Ham. (Ohio) 71; *Dean v. City of Madison*, 9 Wis., 402 ; *Knowlton v. Supervisors of Rock Co.*, 9 Wis., 410. And see § 253, ch. 80, Gen. Stat., p. 677.

The inherent powers of a court of equity are sufficient, without the aid of said § 253, to authorize its interference by injunction in the case at bar, and the plaintiff is entitled to the relief prayed for in its petition.

*Voss & French*, for defendants in error:

1. The petition for the injunction is based upon § 253 of the civil code. That section, in its language, is permissive only, and allows the court to enjoin, 1, The *illegal levy* of any tax, charge or assessment; 2, The *collection* of any *illegal* tax, charge or assessment; 3, The proceedings to enforce the same.

These are the only cases respecting taxes in which it is possible to successfully institute proceedings, to enjoin and restrain public officers from the performance of express statutory duties.

The plaintiff fails to bring its case within either class. No *notice* was essential; an insufficient notice did not prejudice the plaintiff. But due and sufficient notice was given. The *time* and *place* were specified when the county clerks would meet to assess plaintiff's property. It was not necessary to specify what particular county clerks; and mentioning those of two counties was surplusage.

The purpose and object of the notice is to aid the assessor in the proper performance of his duties in ascertaining and assessing *all* taxable property, and not merely to benefit the party to be assessed. The plaintiff knew the law; knew the counties into and through which its railroad was constructed; knew the purpose of the meeting; knew that all its property was subject to assessment, and must be assessed, and that by this tribunal. *Utile, per inutile non vitiatur.* See *Black v. Chicago & N. W. R. Co.*, 18 Wis., 208.

2. The law provides, (§ 3, ch. 124, laws of 1869,) the

county clerks of the counties through or into which the railroad shall run, shall constitute a board of assessors, etc. They need not all be present: a majority may act: § 1, ch. 104, Gen. Stat., p. 999, sub-div. 4.

And a *deputy* county clerk may act for his principal; § 41, ch. 25, p. 243.

The act of 1869, under which this assessment was made, is amendatory and supplemental to the General Tax Act of 1868. By the provisions of that act, ch. 107, Gen. Stat. 1868, there are various duties enjoined upon county clerks, relating to the assessment and collection of taxes. By § 19, it is his duty to assess merchants and others, therein named; can he act by *deputy* in that case? By § 29, the county clerk is required to assess certain property therein named; can he act by *deputy* in that case? By § 36, the county clerk is required to assess certain lands therein named; can he act by *deputy* in that case? By § 38, he is required to assess all lands that have been omitted; can he act by *deputy* in that case? By § 60, he is required to administer an oath to parties who, through sickness, etc., have been prevented from listing their property and to assess the same; can he act by *deputy* in that case? By § 65, he is required in cases therein named to correct the return of the assessor, and increase or diminish the amount of the assessment, thus making a new assessment; can he act by *deputy* in that case? Most certainly. Then how can it be claimed that the *deputy* is incompetent to act in the assessment of railroad property, when no exception is made in that act?

3. The plaintiff claims that its property was assessed higher than other similar property throughout the State, and higher than other property in the same counties. The petition contains no allegation that the property was assessed at a greater value than the law requires. Be-

sides, it has been uniformly held that one tax-payer can-
not complain because others have not been properly as-
sessed. *Page v. City of St. Louis*, 20 Mo., 136.

4. It is claimed that the act under which the assess-
ment was made is unconstitutional. Because the legisla-
ture had no right to authorize an appeal to the supreme
court, this does not invalidate the other portions of the
act. But if, for argument, we admit the act to be uncon-
stitutional, then the assessment is valid under §53, p.
266, Gen. Stat. 1868, ch. 25.

But the act is not unconstitutional. It is one of sev-
eral acts, the whole constituting the general revenue laws
of the State, having for their general object the establish-
ment of an equal and uniform *rate of taxation*. This ac-
complished, the mode by which it is done is not material.

5. To return to §253 of the civil code. Under that
section can the plaintiff maintain this action, and enjoin
the collection of the taxes complained of? If mere irreg-
ularities in the assessment of property and proceedings
of revenue officers, is held to be fatal to the tax, then
the government contains within itself the element of its
own destruction. In a large and complicated revenue
system like our own, where the work must of necessity
be and is entrusted to men unfamiliar with legal forms
and inexperienced in the duties of their offices, there al-
ways will be duties omitted, or at least imperfectly per-
formed. Of this the judiciary will learn by the colossal
appearance of their dockets, if every irregularity is held
to be a ground for injunction. The statute itself is with-
out precedent, and should receive the narrowest and
most limited construction that its language will allow.
The words of the statute may very properly be confined
to cases—1, Where the tax to be enjoined is upon prop-

erty not subject to taxation; 2, Where the tax is levied for an unauthorized purpose.

In these cases the tax is *illegal* and void.  But irregularities in assessing and collecting a tax otherwise lawful, is neither an illegal nor void tax.   *C. B. & Q. R. R. Co. v. Fry*, 22 Ill., 34; *Macklot v. Davenport*, 17 Iowa, 379.

6. The plaintiff must first do equity before it can ask equity.   It must pay or offer to pay its just proportion of taxes upon its property.   The omission to allege such payment or offer is fatal, and no injunction will be granted.   *Roseberry v. Huff*, 27 Ind., 12; *Gillett v. Webster*, 15 Ohio St., 623; *Dean v. Gleason*, 15 Wis., 1; *Myrick v. City of LaCrosse*, 17 Wis., 442.

7. There is a misjoinder of parties.   Wheaton is not shown to have held any warrant or authority to collect the taxes; and until the warrant reaches him he cannot be said to be doing, or about to do, any act prejudicial to plaintiff's rights.   As to him, plaintiff is not entitled to any injunction, nor any relief.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced by the plaintiff in error in the district court of Bourbon county, to set aside and enjoin the collection of a tax, amounting in the aggregate to the sum of $13,648.37, levied by the officers of said county upon the railroad property of the plaintiffs in error, and upon an alleged illegal and unauthorized assessment and valuation of said property, attempted to be made in pursuance of ch. 124 of the laws of 1869.   The tax roll, including this tax, was at the time of the filing of the petition in this case, in the hands of the said C. A. Morris, as treasurer of said county, for collection, and he was about to place a warrant in the

hands of the said C. S. Wheaton, sheriff of said county, for the purpose of collecting said taxes. The plaintiffs moved the court for a temporary injunction against the said Morris and Wheaton, defendants, to restrain them from the collection of said tax. The court below, after hearing the evidence and the arguments of counsel, overruled the motion, and refused to grant the said injunction, whereupon the plaintiffs duly excepted and made a case for this court.

The questions presented for the adjudication of this court are—1st, Is chapter 124, of the laws of 1869, (p. 244,) a valid and constitutional law, so far as it affects the matters involved in this case? 2d, Were the proceedings by which the property of the plaintiffs was valued, and such valuation apportioned to the different counties along the lines of their railroad, so irregular as to render the tax levied upon such valuation illegal and void? 3d, Can this action be maintained for the purpose of adjudicating either of said questions? is it the proper remedy of the plaintiffs? and are the plaintiffs entitled to the relief they ask? Involved in these questions are many others, which we will consider as we proceed.

I. Is chapter 124, of the laws of 1869, a valid and constitutional law so far as it affects the subject-matter of this action? We think it is. The plaintiffs however claim that it is not—*first*, because it is in contravention of art. 11, § 1, of the constitution which provides that "The legislature shall provide for a uniform and equal rate of assessment and taxation;" and *second*, because it is in contravention of art. 3 of the constitution, as decided by this court in the case of *The Auditor of State v. The A., T. & S. F. R. W. Co.,* 6 Kas., 500.

The plaintiffs claims that this act is in contravention of

*1. Ch. 124, Laws of 1869, is constitutional and valid.*

art. 11, § 1, of the constitution because it prescribes a mode for the assessment, taxation, and collection of the taxes on railroad property, different from that of other property in the same taxing districts, and because it provides " for the assessment of property without the taxing district, even to the assessment of property both real and personal lying in another State." The principal if not the only differences complained of in the mode of assessment, etc., are, that railroad property is assessed by county clerks, while other property is assessed by township assessors, and never by county clerks, except when it is omitted by the township assessors; railroad property is assessed along the whole line of the railroad, and in the aggregate, although it may run through many townships, or through many counties, or even out of the State; while other property is assessed for each township, and only so much of it as lies within the township; railroad property is all assessed as personal property, although much of it may be real estate, while other real estate is assessed as real estate; there is no provision allowing the county board of equalization to equalize the valuation of the real estate of a railroad company within each county, while there is a provision of law allowing the county board of equalization to equalize the valuation of other real estate; the taxes on railroad property are collected in the same manner that the taxes on personal property are collected, although a portion of the railroad property may be real estate, while the taxes on all other real estate are collected in a different manner. It will be seen that the counsel for the plaintiff misconstrues the constitution. The constitution does not require that the *manner or mode of assessing and taxing* property, or the manner and mode of *collecting the taxes*, shall be equal and uniform; but it

·simply requires that all property shall be assessed and taxed at *an equal and uniform rate.*

This the legislature have provided for. All taxable property, real and personal, within this State, must, under the statutes, be assessed at its true value in money, and the takes levied upon said assessment must be at an equal and uniform rate. The State taxes, under the statutes, are equal and uniform throughout the State, being levied on a uniform valuation, and fixed at a uniform rate on each dollar of the valuation throughout the State; each county tax is equal and uniform in the same manner throughout the county; and the same may be said of the taxes of each township, district, city and village; and this is all that is required by the constitution. (*Hines v. Leavenworth*, 3 Kas., 201.)

It is not only claimed that because other property is assessed by township assessors, that railroads should also be assessed by township assessors, but it is also claimed, that because a township assessor assesses property only which is situated within his own township, that therefore railroad property should be assessed separately in each township through which it runs, that long lines of railroads, for instance, extending through many townships and many counties, and from one end of the State to the other, should be so divided into pieces or sections, that each township assessor may assess just that portion of the road, which runs through his own township, without any regard to the value of the rest of the road, or without taking the rest of the road into consideration. Probably the legislature could provide for just such an assessment, but it would be very absurd in its practical operation. A railroad is an entire thing, and should be assessed as a whole. It would be almost as easy and as reasonable to divide a house or a locomotive into portions, and assess

each portion separately, as to divide a railroad into portions, and assess each portion of it separately. A portion of a railroad, running through one township only, would be worth but little if anything, while that same portion, in connection with the balance of the road, might be invaluable. The legislature have wisely provided that each road shall be assessed as a whole, and then, that the assessment shall be apportioned for taxation to each county, township, etc., through which the road runs.

The counsel for plaintiffs in error refers us to the case of the *Exchange Bank of Columbus v. Hines,* (3 Ohio Stat., 15,) but as the constitution of Ohio differs from ours in this respect, whatever may be the decision in that case, it has no application to this case. In Ohio, under their constitution, all taxation is to be by " *a uniform rule ;*" in this State, under our constitution, it is to be at *a uniform rate.* The difference is plain.

It is also claimed that said act is unconstitutional, because it provides " for the assessment of property without the taxing districts, even to the assessment of property, both real and personal, lying in another State." To some extent said act provides as is claimed; but the assessment of property out of the State or out of the taxing districts is not made for the purpose of taxing said property, but only for the purpose of ascertaining the value of the property within the State, and within the taxing districts. No taxes are ever levied under the act, except upon property within the State, and within the taxing district. As we have already stated, a railroad is an entire thing, and cannot well be valued or assessed except as a whole. Hence the provision of the act that provides for taking the entire value of the road, and dividing it up by a certain rule for each county, township, etc., through which the road runs, is, at least, a

reasonable rule, and except in rare cases, is probably as good a rule for determining the true value of each particular portion of the road as any other rule that could be adopted. We shall not declare the rule unconstitutional until it be shown that it has in some instance worked injustice, or until it is shown that the operation of the rule has clearly violated some provision of the constitution. In this case it has hardly been shown that the objectionable part of the rule has been applied; at most, it has not been shown that any real estate, not in Kansas, was taken into consideration in fixing the valuation of the road. And with reference to the rolling-stock, we suppose that it may all be assessed in Kansas, notwithstanding that it may also be used in Missouri. If such be the case, then it is simply a benefit to the railroad to have a deduction made on the rolling-stock, in proportion to the number of miles of railroad they have in Missouri. But even if the rule was applied in this case, it is not shown that it has worked any injustice to the plaintiffs in error. It is not shown that the road was assessed at more than its real value. It is not even shown that it was assessed at its value, or at half its value, and probably it was not so assessed. The entire valuation of the road, with all its property, including " the track, road-bed, right-of-way, water and fuel stations, buildings and the land on which they are situated, machinery, rolling-stock, telegraph lines, and all instruments connected therewith, material on hand and supplies provided for operating and carrying on the business of such railroad, together with the moneys, credits and all other property of such railroad company, used or held for the purposes of operating by such railroad," was considerably less than twelve thousand dollars per mile.

The plaintiffs in error also claim, that the whole of said

act is unconstitutional, because that portion of the same which provides for an appeal from the appraisement of the county clerks to the supreme court is unconstitutional. There is but little foundation for this claim however. The appraisement of the county clerks does not in the least depend upon the action of the supreme court for its validity. Such appraisement or assessment is complete in and of itself, and entirely independent of any action of the supreme court, and is therefore valid, with or without an appeal.

II. Were the proceedings by which the property of the plaintiffs was valued, and such valuation apportioned to the different counties along the line of their railroad, so irregular as to render the tax levied upon such valuation illegal and void? The plaintiffs in error claim that they were—*first*, because no proper notice of the time and place of the meeting of the county clerks was given to the plaintiffs in error; *second*, because no notice of the time and place of meeting of the county clerks was given to the county clerk of *Crawford* county, nor was he present at such meeting; *third*, because the *deputy* county clerk of Miami county was ad-admitted as a member of the board of county clerks, and participated in the proceedings of the board, in place of the county clerk.

*2. Mere irregularities will not vitiate taxes.*

Said ch. 124 is a part of the general revenue law of the State, and must be construed with other portions of the revenue law. It is entitled "An act amendatory and supplemental to 'an act to provide for the assessment and collection of taxes,' approved February 27th, 1868," Section 113 of the said act entitled, " An act to provide for the assessment and collection of taxes," (ch. 107, Gen. Stat., 1868,) reads as follows :

Gulf Railroad Co. v. Morris.

" Sec. 113. No irregularity in the assessment roll, nor omission from the same, nor mere irregularities of any kind in any of the proceedings, shall invalidate any such proceeding, or the title conveyed by the tax deed; nor shall any failure of any officer or officers to perform the duties assigned to him or them, upon the day specified, work an invalidation of any such proceedings, or of said deed."

It will be conceded that the notice to the railroad company was irregular, but only irregular. It mentions two of the county clerks along the line of the railroad but not all of them. It was not necessary however that it should mention all or any of them, and that portion which does mention two of them may be stricken out as surplusage. But the notice itself is not a notice of a jurisdictional character. It is not required for the purpose of giving the county clerks the power to assess the property, but only for the purpose of enabling the owner of the property to be present and see that his property is assessed at a fair value. Even if no notice had been given, the assessment would not for that reason be void. Notice to the owner of the property is never, so far as we are aware, made a prerequisite to a valid assessment. It is true that if any injustice should be done to the property-owner on account of no notice being given, then he would be entitled to some remedy. But such is not this case. No injustice or even hardship has been shown in this case. We also think that this notice, though irregular, is sufficient under said section 113.

We are also inclined to think that section 113 will cure the second irregularity; but we do not propose to decide this question now, but will proceed to the

3. County Clerk; deputy may act.

consideration of the next question, which is, whether a deputy county clerk may in the absence of the county clerk perform the duties of the county clerk. This question we have already decided in the case of *Amrine*

*et al. v. The Kansas Pacific R. R. Co.*, (ante, p. 178.)
We think the record in this case shows that the county
clerk of Miami county was absent, and therefore that the
deputy had a right to act in his place; but if it does not
so show, still it will be presumed, in the absence of any-
thing to the contrary, that the circumstances were such
as to authorize the said deputy to act. (*Sexton v. Rhames*,
13 Wis., 99, 101.)

We will now for the sake of this argument, and for
that only, consider that the said act, (ch. 124, Laws of
1869,) is unconstitutional and void, and that the said
assessment was so totally at variance with the provisions
of said act, that if it has to depend for its validity upon
that act alone, it is void, whether the act itself is void or
not; and still we think the *assessment, as made*, is not
void.   Under the old law railroads were assessed by the
county clerks respectively of each county through which
the road run—the county clerks acting separately, and
not as a board, as under the present law, and the railroad
companies were required to list their property for such
assessment and for taxation. (Gen. Stat., p. 1030, § 29.)
But if the railroad companies did not so list their prop-
erty for assessment and taxation, and the same was
omitted, then the county clerk had the right, without
such listing by the railroad company, to assess such
property; (Gen. Stat., p. 266, § 53; id., p. 1041, § 65;) or,
if the property was real estate, and the county clerk so
chose, he could notify the proper assessor and let him
assess it; (Gen. Stat., p. 1033, § 38; or, if the same was
personal property, the county commissioners also had the
right to assess it. (Gen. Stat., p. 1041, § 65.)   It seems
from these statutes that it was not the intention of the
legislature that any property, under any circumstances,
should escape assessment and taxation.   Even if a mer-

chant, trader, or freighter, commenced business in the
county after the first of March, and before the first of
November, it was the duty of the county clerk to assess
such merchant, trader, or freighter, unless he had been
previously assessed; (Gen. Stat., p. 1027, § 19;) and if any
property entirely escaped assessment and taxation for the
whole year, it was the duty of the assessor to assess it at
double its value for the next year; (Gen. Stat., p. 1038,
§ 55.)

Now while the laws of 1869 made some changes in the
mode of assessing property at the first, or original assess-
ment, for instance, providing that a *board* of county
clerks, instead of the county clerks individually, should
assess railroad property; (Gen. Stat., p. 1030, § 29; Laws
of 1869, ch. 124,) and providing that township trustees,
instead of county assessors, should assess real estate,
(Gen. Stat., p. 1032, § 31; Laws of 1869, p. 113, § 3,) yet
no change has been made for the assessment of property
that has been omitted to be regularly assessed; and hence
it necessarily follows, that if the assessment by the board
of county clerks was for any reason absolutely void, then,
that each county clerk had the right to assess so much of
the road as runs through his own county. Now the
record in this case shows that Mr. C. Fitch, county clerk
of Bourbon county, made the assessments of which the
plaintiffs in error complain. It was upon his motion and
at his figures that the whole road was assessed. It is
true, that the manner of making the assessment was
irregular; but mere irregularities do not render assess-
ments void in this State. (Gen. Stat., p. 1057, § 113.)

III. We now proceed to consider the last question in
this case. Can the plaintiffs maintain this action, and
4. Equity. When are they entitled to the relief they ask? If
relief will not
be granted. the said taxes were absolutely void; if the

property was not subject to taxation; if it was exempted by law from taxation; or if the taxing officers had no jurisdiction over it, nor power to tax it, then there could hardly be any doubt of the right of the plaintiffs to maintain this action, or of their right to the relief they ask. (Gen. Stat., p. 677, § 253.)   On the other hand, if everything concerning the tax proceedings from the listing of the property for taxation up to and including said intended collection was entirely legal and regular, then clearly the plaintiffs would not be entitled to maintain this action, or any other action, and they would not be entitled to the relief they ask in this case, or to any relief in another case.

In the case at bar the tax is not absolutely void, and neither is it free from all irregularities. Can the plaintiffs then maintain this action to set aside said tax or to restrain its collection ?   This depends, as we think, upon the question whether the tax is inequitable and unjust, or whether it would be against conscience and good morals to enforce its collection; for the order of injunction is an equitable remedy, which cannot be granted except in aid of equitable rights; and a party who seeks equity must be prepared to do equity.   No complaint is made in this case of the manner in which this tax is about to be collected.   If it can be collected at all, it seems to be admitted that the officers are proceeding in the proper manner.   The complaint is, that the tax cannot be collected at all.   The naked question then presented to us, is, whether it is equitable and right for the plaintiffs to pay said tax; or rather, whether it is equitable and right for them to pay any tax; for they have as yet made no offer, so far as is shown by the record in this case, to pay any tax, and do not even admit that they are in equity bound to pay any tax.   They seem to desire to be freed

from the payment of all taxes. Is this equitable and just? "The payment of taxes equitably and fairly assessed is a duty which every man is under the strongest legal and moral obligation to perform to the government which affords him protection in his person and property. Governments cannot exist without their revenues, and taxes are levied and contributions enforced upon the principle that they are but just returns for the protection and advantages derived from them. In this sense a proper tax—one which is just and correct in principle— is a debt due the government, which the owner of property has no more right in equity and conscience to withhold, than the most sacred debt of a private nature. It is indeed, when seen in the light of reason and justice, far more sacred and obligatory, inasmuch as\ the considerations whence it proceeds are the highest and most inestimable rights and privileges enjoyed by the citizen. To withhold it, therefore, is a public wrong, which affects the whole community, and which cannot be justified or excused by any rule of equity or sound morality. This * * * is the just and enlightened view of a court of equity, which never moves except to prevent fraud and injustice, and where the relief asked conforms to the principles of rectitude and honesty. It is very well known that there are many persons whose moral perceptions are so obscure and confused, and whose selfishness is so great, that they seem to regard almost any means by which the revenues of the State may be defrauded, or moneys in the public treasury got out, as upright and honorable. One might suppose from their conduct that they considered such practices the highest evidence of public virtue and patriotism. Unfortunately for such projects, courts of equity take a different view; and that branch, at least, of the government against whose success

and prosperity they are aimed, will, if applied to, promptly refuse its aid. The collection of a tax, under the statute, is a legal proceeding to enforce the payment of a debt due the public; and like proceedings at law upon a private claim, equity will only interfere to prevent injustice by the unfair use of the process of the law. The primary and controlling principle in such cases is, that the proceedings to be stayed are inequitable and unjust, and that it will be against conscience to allow them to go on." (*Warden, et al., v. Sup. Fond du Lac Co.*, 14 Wis., 619.) Is it equitable that a corporation, the mere creature of the laws of the State, should refuse to bear its share of the public burdens of the State? The plaintiffs do not complain that the tax is too much; possibly, if their property had been assessed at its actual value, as the law requires that it should be, their taxes would have been double or treble what they are.

It is not sufficient to set aside this tax, or to grant the injunction prayed for, that other property in Bourbon county, or other railroad property in the State, has been assessed at a lower rate than the property of the plaintiffs. Perhaps the assessors of Bourbon county, or the assessors of other railroads, have not done their duty, and have assessed property too low; but that is not a sufficient reason for setting aside the whole of the taxes of the State, where a proper assessment has been made, as we must do if we set aside any portion of the same.

In conclusion we would say, that we do not think that any court of equity ought ever to interfere to set aside a tax that is merely voidable, or to restrain the collection of such tax by injunction, unless strong equitable grounds exist for such interference. *Minturn v. Hays*, 2 Cal., 590; *Bank, &c., v. Hines*, 3 Ohio St., 1; *McCoy v. Chillicothe*, 3 Ohio, 370; *Brewer v. Springfield*, 97 Mass., 152; *Sus-*

*quehanna, &c., v. Supervisors,* 25 N. Y., 312 and cases; *Burns v. Mayor of Atchison,* 2 Kas., 454; *Warden, et al., v. Supervisors, &c.,* 14 Wis., 619; *Roseberry v. Huff,* 27 Ind., 12; *Gillett v. Webster, et al.,* 15 Ohio, 623; *Bond v. Kenosha,* 17 Wis., 284; *Meyrick v. La Crosse,* 17 Wis., 442; *C. B. & Q. R. R. Co., v. Frary, et al.,* 22 Ill., 34.

No such equitable grounds are shown to exist in this case, and therefore we think the court below did right in refusing to grant the temporary injunction asked for by the plaintiffs; and the order ... .e court below must be affirmed.

All the Justices concurring.