THE STATE OF KANSAS *ex. rel.* THE ATTORNEY GENERAL *vs-* THE BOARD OF COUNTY CONMISSIONERS OF ATCHISON COUNTY.

## *Motion for writ of Mandamus.*

Where lands had been bid off by the county treasurer of Atchison county for the taxes of 1858, 1859 and 1860, and have not yet been redeemed, *held* that the taxes are in due course of collection. The county has not failed to "levy" the tax, and is not, therefore, within the provisions of "an act to require certain counties to collect and pay over delinquent territorial taxes." (*Laws* 1863, *chap*. 63.)

The opinion of the court contains a sufficient statement of the facts.

*Attorney General Guthrie and E. V. Banks,* for the State.

This case presents the question whether Atchison county is delinquent, within the intent of the act of February 24th, 1863.

The legislature of 1863 seems to have intended to provide means of paying the territorial creditors, and collecting the territorial credits.

With this intention in view we are to consider the extent of purpose of this act.

The language is, that those counties which have failed to levy and·collect, thus stating in express terms that *collection*, as well as a levy, is required.

The counties are under obligation to the state, which the·act requires to be satisfied.

This county having failed to satisfy its obligation, is, to that extent, delinquent.

That the county has made provision to raise the required amount, and has fallen short of its purpose, does not relieve such delinquency. The county is to pay that share of territorial revenue charged against it, and however much may

have been raised for that purpose, belongs to the county until paid over, and does not benefit the state.

The state has paid the territorial debts and requires to be promptly reimbursed from the territorial credits.

This, Atchison county, to the extent of five thousand three hundred and twenty-one dollars and ten cents, refuses to do.

With the view taken by respondent's counsel, no hardship would be inflicted upon the county by granting the motion, since if provision, as claimed, does not exist the proceeds will constitute a county fund, invested at twenty-five per cent., while its bonds will draw but six per cent., and what assurance has the state that such provision is ample? It has thus far failed, and may continue to fail.

The act providing that the county need not pay over territorial revenue faster than collected, recognizes the right to compel more prompt payment.

But the act of 1863 is a state law, enacted with especial view to compel payment of territorial revenue, and repealed this act by conflict.

*Glenn & Foster*, for respondents.

When the territory of Kansas was admitted into the union and thereby became a state, there were a large amount of debts due from said territory, for which the said territory had issued warrants, or orders on the treasurer, who had no money in his hands to pay the same.

There was at the same time due to said territory from the various counties therein, an amount which in the aggregate, if the same had been collected and paid in, sufficient to pay off the whole amount of said warrants.

The delinquencies in said counties were caused by a failure of the proper officers to enforce the laws for the collection of said tax, and also in some counties by a failure and neglect of the proper officers to levy said tax at all.

The State *ex. rel.* The Attorney General *v.* The County Commissioners.

There was reported as due from the county of Atchison on said territorial tax the sum of five thousand three hundred and twenty-seven dollars and ten cents.    This delinquency did not arise from a failure to *levy* said tax, but from a failure to *collect* the same, and the said tax is slowly but continually being paid into the treasury.

The legislature of the state at its last session passed a law entitled " an act to fund the territorial debt," approved February 20th, 1863, whereby the state was to assume the indebtedness of the territory of Kansas, and it was therein provided that the bonds of the state of Kansas should be issued to the holders of territorial warrants, in amount equal to said warrants.    The said bonds to become due in twenty years from the first day of July, A. D. 1863, and drawing interest at the rate of six per cent. per annum, payable semi-annually on the first day of July.

The only provision made by the said act for the payment of said bonds, and the interest to become due thereon, is contained in section eight of said act, wherein it is provided that the proper officers of the state of Kansas shall cause to be levied and collected in each year, with the other state taxes, a tax sufficient in amount to pay the interest as the same accrues on said bonds, and the said officers shall also cause to be levied and collected a tax to create a sinking fund for the payment of the principal of said bonds when they shall become due, and the proceeds of said taxes were thereby appropriated to the purposes aforesaid.

At the same session the legislature passed an act, which was approved four days after the act above mentioned, and entitled " an act to require certain counties to levy, collect and pay over delinquent territorial taxes," wherein it was provided that the auditor of state should give notice to the county clerks of such counties as had failed or neglected to *levy* the amount of territorial tax due from them, setting forth the amount of tax due from said county ; and it was made the

duty of the county commissioners of such counties, to whom said notice should be sent, to levy and collect, along with other taxes for the year A. D. 1863, the amount specified in the auditor's notice aforesaid, and pay the same into the state treasury.

There is no object stated in said law for which said tax is levied or to be applied, and we are left entirely to conjecture the object for which this tax is required to be levied, collected and paid into the state treasury, but from the act first above cited we are led to presume that this act was passed to raise funds to pay off said bonds of the state, and the interest thereon, when the same should become due.

Although it is at least doubtful whether the legislature of the territory of Kansas had the constitutional right to levy taxes for territorial purposes, so far as this motion is concerned we need not discuss that question, and shall, therefore, confine our argument to the constitutionality, application and policy of the two acts above cited.

We insist that the act of the legislature, approved February 20th, 1863, is in direct conflict with the plain provisions of the constitution of the state.

Section five, article eleven of the constitution provides as follows: "For the purpose of defraying extraordinary expenses and making public improvements the state may contract public debts," and in the same section it is further provided that "every such law shall provide for levying an annual tax sufficient to pay the annual interest of such debt, and the principal thereof, when it shall become due."

This debt imposed upon the state is neither for defraying extraordinary expenses nor for making public improvements. It is an attempt to make the state assume and pay off the debt of the territory of Kansas, which the state of Kansas is no more legally bound to pay than she is to pay the indebtedness of the territory of Nebraska or the state of Missouri.

The State *ex. rel.* The Attorney General *v.* The County Commissione...

The state of Kansas compri... ...t a little over one-half of the area included within the lim... ...f the territory of Kan... ...s, and if the theory would hold go... ...hat the state is liabl... ...or the territorial indebtedness, then... ...s liable to pay a por... ...on of the old debt of what is now C... ...ado territory. The only reason that can be given why ... ...tate of Kansas is more liable to pay the debt of the territory of Kansas than i... he future state of Colorado, is because the eastern half of ...he territory, which was admitted into the union under the ... ...ne of the state of Kansas, was so unfortunate as to get int... ...he union before the western portion.

It may be contended that this debt comes under the "extraordinary expenses," mentioned in the constitution

By the word, *expenses*, as used in that section, it was n... ver intended to give the legislature power to burden the state ...ith the debt of another government, from which contract ...he state can receive no possible benefit or advantage. ...he obvious meaning of the word *expenses*, as therein use..., is some expenditure or outlay of money either necessar... or beneficial to the public interest and welfare, or for carr...ng on the state government.

The sixth section of article eleven provides that, "no ...ebt shall be contracted by the state except as herein provi...ed, unless the proposed law for creating such debt shall firs... be submitted to a direct vote of the electors of the state at some general election." Now, if a debt of this kind can be ...on-tracted by the state without submitting it to a vote of the people, it would be difficult to conceive of any debt which might not be contracted independent of the will of the people.

The meaning of said section is clearly that no debt shall be contracted by the state except for defraying extraordinary expenses and making public improvements, until a law for that purpose shall have been ratified by the voice of the people.

The right of the state to contract the debt, by the same section, carries with it not only the right but the duty to provide in the same law for levying a tax to pay that debt.

In exercising the taxing power, the constitutional provisions must be strictly complied with. The power of taxation being a sovereign power, can only be exercised by the general assembly when, and as conferred by, the constitution. (*Mays vs. The City of Cincinnati,* 1 *Ohio St.,* 268; *City of Zanesville vs. Richards,* 5 *Ohio St.* 589.)

The other act above cited, and approved the 24th day of February, 1863, being the immediate authority under which this application for a mandamus is made, is clearly in conflict with at least two sections of the constitution; and further, this law, from its express and plain provisions, only refers to such counties as "*have failed or neglected to levy*" the territorial tax, those being the words used in the first section, and therefore was never intended to apply to the county of Atchison, as said county had never failed or neglected to levy said tax. We will present these two points in the order above stated.

I. As heretofore stated, the said act of the legislature does not state the object for which said tax is required to be levied.

Section four, article eleven of the constitution is as follows: "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which object only such tax shall be applied."

This act simply provides that the tax shall be levied, collected and paid into the state treasury, as will be seen from section two of the said act, without stating the object at all of levying said tax. The constitution has plainly provided that the object of such tax shall be *distinctly* stated. In fact, we cannot even infer from implication the object of levying said tax; and what makes the said enactment appear still more obnoxious is, that it might be inferred from the

face of it that the state had attempted to enter into the business of a collecting agent for the debts of the territorial government.

Section one of article eleven of the constitution provides that "the legislature shall provide for a *uniform* and *equal* rate of assessment and taxation." Does this law provide for a *uniform* and *equal* rate of assessment and taxation? Clearly it does not. It provides that one county shall levy and collect a certain tax, while another county shall levy and collect another amount of tax, and still another county is not required to levy any tax whatever.

If that section of the constitution means anything, it certainly refers to a taxation of the property throughout the state to pay a public debt of the state; and it is claimed that that is the object of this tax, although the law nowhere states the object.

These bonds as soon as issued, if the state had the right to contract such a debt, at once become a public debt of the state, for the payment of which the real and personal property within the state becomes equally charged and liable, and the legislature is bound to provide for a *uniform* and *equal* rate of assessment and taxation for the payment of the same.

I do not apprehend that it is necessary for me to again refer to the danger of permitting the least provision of the constitution to be infringed upon in exercising the taxing power, but I cannot forbear quoting a few lines from the opinion of the court in the case of *Mays vs. The City of Cincinnati*, (1 *Ohio St.*, 268.) The court remarked as follows:

"The power to tax is one of the hightest attributes of sovereignty. It involves the right to take the private property of the citizen, without his consent, and without other compensation than the promotion of the public good.

"Such interference with the natural right of acquisition and enjoyment, guaranteed by the constitution, can only be justified *when public necessity clearly demands it.*

"Being a sovereign power, it can only be exercised by the general assembly when delegated by the people in the fundamental law."

The same doctrine is again asserted in the case of *The City of Zanesville vs. Richards*, (5 *Ohio St.*, 589.)

II. The said law was never intended to apply to such counties as had not failed or neglected to *levy* the territorial tax.

It appears from the evidence offered in this case, and which is not controverted, that the county of Atchison had always levied the territorial tax due from said county, and this fact appears from the auditor's books. That officer was required by law to give notice to the clerks of such counties only as had failed or neglected to levy said tax, and therefore any notice sent by him to any other county was extra official and simply null and void.

It will not be contended that the auditor, by exceeding his duties and sending notice to all the counties, could compel them to levy the tax, for this would be leaving the discretionary power with that officer to tax such counties as he might see proper.

He is required by the first section of said act to send the notice to certain counties, to wit: such counties as "*have failed or neglected to levy*" the tax; and by the second section the board of county commissioners of the counties to which *said* notice shall be sent were required to *levy and collect* the said tax.

What is the meaning of the words, "said notice," in the second section?

They clearly refer to the notice required to be sent by the auditor in the first section, and that notice being only to certain counties, the board of county commissioners of such counties only were required to levy and collect the said tax.

To say the least, it is somewhat unusual to levy the same tax twice, when the first levy was regular and lawful. If the

officers fail to enforce the collection of the tax within the time and in the manner prescribed by law, the remedy is not a new levy.

By the Court, Cobb, C. J.  This is a motion for a mandamus to compel the defendants to levy and collect, with the taxes for the year 1863, an additional sum of five thousand three hundred and twenty-seven dollars and ten cents, for a balance of territorial taxes imposed upon the people of that county in the years 1858, 1859 and 1860.  It appears from the papers, upon which the motion is founded, that such a balance of said taxes remains yet unpaid into the state treasury, and this is all the evidence given of any default of the county commissioners of Atchison county, or of any one in regard to such taxes.

Section forty-two of the "act to provide for the assessment and collection of taxes," approved February 27th, 1860, (*Comp. Laws*, § 67,) provides that "if any parcel of lands cannot be sold for the amount of tax, penalty and charges thereon, it shall be bid off by the county treasurer for the county, for such amount."  The tax law of 1858, in force up to the time of the passage of the act referred to, contains a similar provision, and under both laws the owner or occupant is allowed three years to redeem the land sold.

Section two of "an act relating to the payment of taxes," passed February 27, 1860, which is still in force, provides that county treasurers shall not be required to pay into the territorial treasury more territorial taxes than shall have been actually collected in their respective counties.

Under these laws the only fair inference, from the facts stated, is, that lands have been bid off by the county treasurer of Atchison county for the taxes so unpaid, and have not yet been redeemed; in which case no one is in default, but the taxes are in due course of collection.  The county has not

failed to "levy" the tax, and is, therefore, not within the provisions of chapter sixty-three of the laws of 1863.

The motion must be denied.

All the justices concurring.