CITY OF LAWRENCE, *et al.,* v. MARY A. C. KILLAM.

1. TAX SALES, AND TAX DEEDS; *Injunction; Irregularities.* Equity will not interfere to restrain by injunction the collection of taxes when the property is subject to taxation, the tax legal, and the valuation not excessive, simply because of irregularities in the tax proceedings. And this rule applies alike to general and special taxes, and whether the application be to restrain a sale, or enjoin the execution of a deed.

2. EQUITY; *Where Legal and Illegal Taxes are United.* Where a definable portion of the tax is legal, and the balance illegal, equity will not interfere unless that which is legal be first paid.

3. STREET IMPROVEMENTS; *Areas at Street Crossings; Act of* 1867. Under the act of 1867, in reference to cities of the second class, "all improvements of the squares or areas formed by the crossings of streets" were chargeable to the city at large, and this included the sidewalks at the corners of these squares as well as the paving and macadamizing in the center.

4. ———— *Sidewalks.* Under the same act the cost of a sidewalk along the side of a corner-lot might be charged wholly to that lot.

5. CONTRACTOR WITH CITY; *Councilman.* Where a partnership had made a contract with a city to build sidewalks, and thereafter one member of such partnership became a member of the city council, and while such member the sidewalks were built, accepted and paid for by the city, *held,* that a lot-owner whose lot has been sold for non-payment of the special assessment for such sidewalks was not on that account entitled under ₵ 4, Gen. Stat., 389, to have the sale set aside and a tax deed enjoined.

6. CONTRACT OF CITY; *Stipulation varying Price; Act of* 1867. Under the act of 1867 above named, a city could in the spring make a contract for the building of sidewalks to be done immediately, and stipulate for payment at the regular tax-paying time in the succeeding winter; and a stipulation in such contract that immediate payment by a lot-owner of a much less sum than the price to be paid in the succeeding winter should discharge such lot from further liability would not invalidate the contract, nor avoid the assessment and sale for the full contract-price of all lots whose owners should not avail themselves of this stipulation.

*Error from Douglas District Court.*

INJUNCTION, brought by *Killam* against the *City of Lawrence,* the *Board of Commr's of Douglas Co.,* and *Paul R. Brooks,* county clerk of said county, to enjoin and restrain said clerk from executing and issuing tax-deeds for three lots sold by

the treasurer of said county for delinquent special assessments levied on such lots by said city for constructing sidewalks in front of said lots, and to set aside and declare void the said special assessments. The opinion, *infra*, contains a sufficient statement of the facts. The sidewalks were built in 1867 pursuant to a contract between the city and Lescher and Melville, dated April 24th 1867, and was for building walks on eighteen different streets. The walks were built, and the cost thereof was apportioned between the several lots, and assessed on said lots for said year 1867. The assessments on plaintiff's lots not being paid, said lots were sold therefor as provided by law, and were struck off to the county. All other taxes on said lots for said year were paid before the tax-sale. This action was commenced in September 1869, and was tried at the August Term 1870 of the district court. There was a general finding in favor of the plaintiff, and a perpetual injunction decreed as prayed for in the petition. New trial refused, and the defendants bring the case here on error for review.

*Geo. J. Barker*, and *Thacher & Stephens*, for plaintiffs in error:

1. The plaintiff below alleges an illegal tax, and in order to recover, must show one void for illegality, and also that she has with diligence pursued the correct course in seeking a remedy. The laws of 1867 are the statutes governing the proceedings. The city had authority to make the improvement and to assess the expense thereof upon the lots abutting thereon. (Laws of 1867, p. 112, § 2, sub. 2.) The statute does not charge the property with the cost of building the walk in front of the lots, but the cost of "the improvement," that is, all the walk directed to be built is to be charged upon the abutting property, according to the front foot—and the improvement includes the square at the corner, necessary to make the walks connect. That square is sidewalk, and a part of the improvement: 5 Ohio St., 225; 14 Ohio St., 438; 10 Ohio St., 159. The power to tax implies a power to apportion the tax, and the power of apportionment has no

limit where there is no constitutional restraint: 4 Comst., 420. It is admitted that the expense was apportioned upon the property. In apportioning a tax, the common council act judicially, and are left to their discretion, and there is no complaint that such discretion has been abused: 20 Johns., 430; 23 Wend., 279.

2. It is urged that the city exceeded its authority in charging more than the price to be paid in cash; that the proceedings are harsh and inequitable. It is evident from the ordinance and from the contract, that the city scrip was at a discount. Had it been at par, there would have been no necessity for the alternative clause in the contract as to payment in scrip or money.

The scrip is not bonds, and the provision in the charter as to rate of bonds has no application. There is no sale contemplated. An improvement is necessary, and has to be provided for. The city has no cash. It has credit. It can get the work done for credit, and for a less sum in cash, and the ordinance provides for the protection of the parties to be charged: First, it allows each party to build his own walk, and gives sixty days in which to do it; second, if the party does not avail himself of the privilege, it makes a contract whereby he can pay the cash price of the work; third, in case the party avails himself of neither of the provisions made in his favor, it then charges the property with the expense, to which the city is put in its exigency. This is just, and the practice is fully borne out by the case of *Warren v. Henley*, 31 Iowa, 31. A stipulation is reserved for the lot-owner to pay cash rates or pay the credit price. Having been dilatory in her duty, the lot-owner cannot now charge the consequences upon innocent parties.

3. It is further alleged that Lescher was a councilman of the city, and therefore incompetent to contract. The contract is dated April 24th, 1867. Lescher did not become a member of the common council until May 6th, 1867, when he for the first time took his seat. He was not yet a councilman at the making of the contract. The statute prohibits the letting

of a ·contract to a person *in office.* This party was not in office at the time, and consequently not within the provision of the statute. The statute is highly penal, and will not be extended by construction.

The party knew of the work being done, yet took no steps to raise the question, but waited until the whole expense had been incurred, and the whole benefit to the property realized. More than this, she waited until after a sale and purchase for value by an innocent party, and now seeks to charge the whole loss upon that party. It is the duty of a person who would raise a question like the one raised here to act promptly, and not lie by and secure benefits, and then seek to create a forfeiture against an innocent party: 15 Ohio St., 64; 3 Wall., 210; 9 Paige, 24; 10 Cush., 252.

4. 'The statute only allows an injunction to restrain the collection of the tax. In this case the tax has been collected. The consideration for the conveyance has been paid. The property is purchased in good faith, and the relief sought is to deprive the party of the fruits of the purchase. Surely, this is not equitable, and this penal statute ought not to be extended by construction to do a wrong.

There is no offer to reimburse the county; no offer to contribute for benefits received, but a bare, bald attempt to appropriate the avails of another, and rely upon a supposed technicality to consummate the act. ' This is not doing equity so as to be entitled to equity.

*John Hutchings,* and *Nelson Cobb,* for defendant in error:

1. The ordinances authorizing and providing for making the improvement, and the contract made in pursuance thereof were in conflict with the act to incorporate cities of the second class, and therefore void. The only authority or power to the city of Lawrence to provide for and make the improvement in question and to make the assessment for the payment of the same was conferred by the act of 1867, in relation to cities of the second class, which provides, (p. 112, clause 2 of § 2,) that "all improvements of the squares or

areas formed by the crossing of streets, and for foot-walks across streets, the assessments shall be made on all the real estate within the corporate limits of the city." And also, (same page and clause,) that "for making and repairing side-walks, the assessments shall be made on all lots and pieces of ground abutting on the improvement, *according to the front foot thereof.*" * * "The assessments made under this act shall be known as 'special assessments for improvements,' shall be levied and collected as one tax, in addition to the taxes for general revenue purposes, and shall be certified to the county clerk of the proper county, to be placed on the tax-roll for collection, subject to the same penalties, and collected in like manner as other taxes under existing laws." And § 3 of the same act, at page 122, provides further, among other things, that "the mayor and council shall have no power to sell or dispose of scrip, orders or bonds at less than their par value."

Now if the ordinances did not conform strictly to the powers granted by the act referred to, and the mayor and council did not follow strictly the mode laid down thereby in constructing the improvement and making their assessment to pay for the same, their proceedings were illegal, and their acts unauthorized and void. A municipal corporation takes nothing by implication, but it must conform strictly to the provisions of its charter. *City of Leavenworth v. Norton,* 1 Kas., 432; 20 Cal., 96; 9 Barb., 152; 6 N. Y., 92; 5 Kas., 525.

The ordinance authorizing the building of the walks, and the contract to build them, were different from and contrary to the charter. The contract provided that the sidewalk should be paid for per *area* instead of the front foot; and both provided that if not paid for in a given number of days, a penalty of 25 per cent., the difference between the price of the walk in cash and the par value of the scrip, should be added. As the law prohibited the city from dis-posing of the scrip at less than the par value, and as they allege the value of the scrip to have been only seventy-five

per cent. of its par value, the cash-price fixed in the contract is the only legal cost of the walk that is to be considered. Then, in pursuance of said ordinance and contract, the city charged the defendant in error the 25 per cent. penalty for not paying the tax within thirty days, at a time not fixed by law for the collection of taxes. This was in effect a penalty of 25 per cent. imposed for the non-payment of the tax before the same was due by law. The penalty of ten per cent. was the only penalty, and the tenth of January was the only time for imposing such penalty for non-payment of taxes, known to "existing laws."

The city did not impose the payment of the scrip-price on account of its want of funds. No proof of the want of funds exists, nor that the city paid any scrip to the contractors. It reserved in the contract the right to pay the contractors all in money. In the absence of proof to the contrary, the presumption is that scrip was worth its par value. It cannot be denied that the mayor and council in paying the contractors a dollar in scrip for every eighty cents' worth in cash of improvement, were disposing of the scrip for less than its par value, and the ordinance and contract itself providing for such action were void upon their face. It will not answer this objection to say that the difference between the cash-price and the scrip-price was the difference between a cash and a credit transaction. The city had no power to make such improvements on credit. It only had the power to make its assessment before building the improvement if payment was required before a regular assessment could be collected after the work had commenced. Nor could the city issue scrip to build sidewalk; because scrip purports to make the city at large a debtor, while the abutting property is alone chargeable for such improvements. No orders could be made on the treasurer for money to pay for such improvements until the money had been collected for that purpose and appropriated by ordinance. This is evidently what the law contemplates, because it gives that method and authorizes no other means for paying for sidewalks.

2. We concur with counsel for plaintiffs in error that the statute does not charge the property with the cost of building the walk in front of the lots, but the entire "improvement" —all the walk directed to be built, is to be assessed to the abutting property, *according to the front foot thereof*. If the whole amount of the walks built there were to be considered one improvement, then the assessment was illegal and wrong, because it did not average the wide walk with the narrow, per front foot, and charge the cost of the same in just and equal proportions to all the lots abutting on the improvement. Instead of so doing it charged the entire cost of the wide walk on the *north side* of our lot 21 to that lot, regardless of the "front foot." A corner lot has no more *"front feet"* than any other lot of equal size, and is no more benefited by the walk across the *end* of a block than all or any of the other lots in such block. The same objection applies if the different pieces of walk that were contiguous were each to be considered a separate improvement as if the entire amount of walk authorized by the ordinance were to be considered one improvement.

3. The assessment was illegal because they assessed the defendant's property with 25 per cent. more than it was chargeable with for the walk (wide and narrow) abutting on the property assessed, and the cost of the 5½ feet in length of the wide walk constituting an improvement on the square or area formed by the crossing of New Hampshire and Winthrop streets not abutting on the plaintiff's lots, and which should have been paid for by a general tax, and 25 per cent. more on that included; and this would have been so even if the average had been correctly made. It was void for the overlaying, and was properly set aside. Blackw. on Tax Titles, 192, 193; 8 Blackf., 335; 19 Ohio, 324. The sidewalk is a part of the street. (See 31 Iowa, cited by plaintiff's counsel.) And the city had just as much right to charge us with the crosswalks which were contiguous to the improvement in question, or any other improvement in the street crossing, as with the square of the walk on the corner of lot 21.

33—11 KAS.

Conceding for the sake of the argument the power of apportionment as claimed by counsel for plaintiff, still our objection is unanswered; for the wide walk north of lot 21, and the 5½ feet in length thereof constituting an improvement in the area formed by the crossing of the streets, were charged without any apportionment whatever to our lot 21, without regard to the front foot. The 5½ feet were just as much a part of the area in the street crossing as the crosswalks contiguous thereto. If chargeable as a part of the sidewalk improvement it should have been apportioned to all the lots abutting on the improvement "according to the front foot thereof."

4. Lescher, one of the contractors for the construction of the improvement, was a member of the council, and was prohibited by law from entering into such a contract, and from performing or doing the work while holding and exercising his office. This rendered the contract void, and his claim for compensation illegal, and it could not therefore be charged against the defendant's property. (Gen. Stat., p. 389, § 4.) It is contended that because Lescher had not taken his seat on the 24th of April, when the contract purports to have been executed, the case is not within the statute. The object of the statute was to prevent officers from speculating in their offices; and even if the contract was not illegal at the time it was made, Lescher became disqualified for performing it as soon as he was sworn in and took his seat. On the 24th of April, when the contract was dated, both Lescher and the mayor and council knew that he would be in the council before the work under the contract was to be performed. He was elected on the first day of April, and on the 4th the votes were canvassed by this same council, and his election declared. During all the time the work was being performed Lescher, as member of the council, had in part its "supervision, direction and control," and had a vote on the auditing of his claims, and deciding whether he should be paid in scrip worth a hundred cents on the dollar at a discount of twenty-five per cent., or should receive the contract-price in cash.

By a careful reading of the section referred to it will be seen that Lescher was not only within the spirit of the act, but the letter also. In no sense can the county be considered an innocent purchaser. All the proceedings in the case were matters of public record, and the defendant had paid all other taxes leaving this alone unpaid, which also appeared of record.

5. The right of defendant in error to remedy by injunction in this case is unquestionable. The statute provides that an injunction may be granted to enjoin the illegal levy of any tax charge or assessment, or the collection of any illegal tax charge or assessment, *or any proceeding to enforce the same."* (Code, § 253.) The conveyance of property pursuant to a tax-sale is certainly a proceeding to enforce the tax. 5 Minn., 95 to 108; 14 N. Y., 90. And an action will also lie without the plaintiff's tendering the amount of taxes even where there is a statute requiring it. 5 Minn., 95; 37 Ill., 82; Blackw. on Tax Titles, 100; Sedgw. on Const. Law, 611.

The opinion of the court was delivered by

BREWER, J.: The record in this case shows that Mary A. C. Killam was the owner of lots 21, 23 and 25, fronting upon New Hampshire street, on the west side thereof, in the city of Lawrence, the said lot 21, on the north side, also abutting upon Winthrop street; and that on the 6th of March 1867 an ordinance was passed by the common council of said city providing for the building of sidewalks on various streets, including those adjacent to the above lots. It was provided by said ordinance that the walk on New Hampshire street should be four feet wide, and that on Winthrop street ten feet wide. Afterward, on the 21st of the same month, another ordinance "amendatory of and supplementary to" that of March 6th, was passed, which provided that all owners of lots adjacent to the proposed improvement, filing their notice of intention with the clerk of the city within ten days of the publication of the amendatory ordinance to construct his or her sidewalk, should have ninety days in which

to do so. It also provided that the party authorized to let the contract for building said walks on the part of the city should advertise for proposals. In pursuance of these ordinances a contract was let, the sidewalks built, and the lots sold for nonpayment of the assessments thereof, the county of Douglas becoming the purchaser for a valuable consideration. Thereafter, without paying or offering to pay any portion of these assessments, the defendant in error brought her action, seeking to have the sale declared void, and to restrain the execution of any deed therefor. She obtained a decree in the district court which plaintiffs in error now seek to reverse.

Several questions arise which will require consideration, and the first is, under what circumstances will equity, after a sale for nonpayment of taxes or assessments has been made, declare the sale void, and restrain the issue of a tax-deed. Several cases have been before this court in which efforts have been made to restrain tax-sales, and the rules to guide

1. Enjoining tax-sales and tax-deeds.   in such cases fully stated and determined: *Sleeper v. Justice, et al.*, 6 Kas., 300; *Gulf Rld. Co. v. Morris*, 7 Kas., 210; *K. P. Rly. Co. v. Russell*, 8 Kas., 558; *Parker, Treas., v. Challiss*, 9 Kas., 155; *City of Ottawa v. Barney*, 10 Kas., 270. In two of the cases cited, the two railroad cases, the tax was a tax upon personal property, and the injunctions sought were to restrain the levy and sale under a tax-warrant. The other cases were of special assessments for local improvements, as in the case at bar, and the applications were to restrain any sale. In these cases the general doctrine is laid down that courts of equity will not interfere to restrain by injunction the collection of taxes, when the property is subject to taxation, the tax legal, and the valuation not excessive, simply because of irregularities in the assessment. The rule applies to general and special taxes alike, and as stated is broad enough to cover every step in the collection of taxes. Now the issue of a tax-deed is but one step in the proceedings for the collection of taxes. Those proceedings are not complete when the sale is made; certainly not when, as here, the county is the purchaser:

*State ex rel. v. Comm'rs of Atchison,* 1 Kas., 479. Equity bases its refusal to restrain a sale, not on the ground that the action is premature, and that the party's title is in no danger until a deed is sought, but on the ground that it ought never to interfere; that in good conscience the party ought to pay, that the tax ought to be collected, and that it would be inequitable to relieve him therefrom. The reasoning applies with equal force to the tax-deed. Indeed, to refuse to restrain a sale, and thereafter to restrain a deed, would be gross trifling with the purchaser who by the one act is invited to buy that which by the other act he is not permitted to acquire. So that it may be safely laid down that the same rules will guide the court in applications to restrain tax-deeds as to restrain tax-sales.

Where a definable portion of the tax is legal and the balance illegal, equity will refuse to interfere unless that which is legal be first paid: *City of Ottawa v. Barney,* 10 Kas., 270; *Smith v. Comm'rs of Leavenworth Co.,* 9 Kas., 296.

2. Equity, where legal and illegal taxes are united.

The case of the *City of Leavenworth v. Norton,* 1 Kas., 432, may seem at first to conflict with the proposition, as there it was conceded by the court that a portion of the tax was legal and still the execution of tax-deeds was restrained. For all that appears in the opinion of the court, the legal portion may already have been paid or tendered. At any rate, the attention of the court was not drawn to the precise point here presented, and it is only incidentally stated that a portion of the tax was legal in order to show the illegality of the rest. The same rule applies to deeds and sales. In each case if the legal tax has not been paid or tendered before suit, the court may properly permit the same to be done within a reasonable time and the terms of the decree to vary with the fact of payment.

We come now to the questions more immediately relating to the proceedings in this case. As has been already noticed, the sale was for nonpayment of a sidewalk-tax. No question is raised as to the power of the city to construct sidewalks and assess the cost thereof upon the adjacent property; none

3. Street im-
provements
in cities of
second class
under charter
of 1867.

as to the liability of the lots in question to this kind of taxation. The objections made are, that the proceedings do not conform to the requirements of the city charter, and are therefore void. There are four of these objections which will require notice. Two of these appear in the following statement of facts presented by counsel in their brief. First: June 19th there had been built on the north side of defendant's lot 21, on Winthrop street, a piece of walk 10 feet wide and 122½ feet long, being 5½ feet longer than the lot itself, the said 5½ feet projecting eastwardly into "the square or area" formed by the "crossing" of Winthrop and New Hampshire streets, and the whole of said piece of walk estimated "per area" as equivalent to a piece of walk 306½ feet long and 4 feet wide and charged up to said lot 21. Second: June 26th there had been built on the east side of all of said lots, 21, 23 and 25, on New Hampshire street, a strip of walk four feet wide and one hundred and fifty feet long, which was charged up against said lots in equal proportions. Was the cost of the five and a half feet of sidewalk projecting east of lot 21, and into the square or area formed by the crossing of the streets, properly chargeable on one or more of the adjacent lots, or should it have been paid for by a general tax? Was the cost of the 117 feet of sidewalk on the north side of lot 21 chargeable wholly to that lot, or ought it to have been apportioned between that and other lots? The only authority or power to the city of Lawrence to provide for and make the improvement in question, and to make the assessment for payment of the same, was conferred by the act of 1867 in relation to cities of the second class, which provides that, "For all improvements of the squares or areas formed by the crossing of streets, and for foot-walks across streets, the assessments shall be made on all the real estate within the corporate limits of the city;" and that, "for making and repairing sidewalks the assessments shall be made on all lots and pieces of ground abutting on the improvement *according to the front foot thereof.*" As to the

cost of the 5½ feet of sidewalk above described, we think that it is governed by the first of the clauses just quoted. It was an improvement of the area formed by the crossing of Winthrop and New Hampshire streets. The portion of sidewalk at such corner is as much a part of the "area" as the part more particularly designed for the use of horses and carriages. There can be no good reason why the curbing and guttering around each corner sidewalk should be paid for by the city at large and the sidewalk itself by the neighboring lots. At any rate, it is a matter which the legislature has exclusive right to determine, and it seems to us the comprehensive term "all improvements" must be held to include sidewalks, and that the legislature intended that only those improvements which are squarely in front of a lot should be chargeable upon that lot. By this construction we avoid the question as to whether this corner sidewalk can be said to "abut" on any lot, inasmuch as it only corners on the corner lot, and we ascribe to the legislature the intention of establishing a more uniform rule of apportioning the burden of street improvements than if the lots paid for the sidewalk and the city for curbing, guttering and macadamizing. Upon the second question we think the corner lot was properly chargeable with the entire cost of the 117 feet of sidewalk. It is the only lot abutting on such improvement, and whether the front be ten or fifty feet is immaterial. We know that in a narrow and restricted sense the term "abutting" is used in reference to that which touches a lot at the end and "adjoining" to that which is on the side; (1 Bouvier's Law Dict., *Abuttals;*) but we do not think the term is used in this statute in such restricted sense, but rather includes everything which touches the lot, whether in front or on the sides.

*Areas at street crossings.*

*4. Sidewalks. Corner lots.*

A third question is thus presented: On April 1st T. H. Lescher was elected councilman; on April 4th the canvass was made and the result declared; on April 24th the contract for building the sidewalks was made with Lescher & Melville, Lescher being the councilman elect.

*5. Councilman. Contractor with city.*

On May 6th he took his seat as a member of the council. The work was completed and accepted while he was councilman. It is claimed under § 4 of the act of February 26th, 1867, (Gen. Stat., 389,) that by reason of these facts "the contract was void, his claim for compensation illegal, and that it could not be charged against the defendant's property." At the time the contract was executed Lescher was not a councilman; the contract therefore was then valid. This contract imposes obligations on each party to it. A failure by either to perform, gives to the other a cause of action. How can either without the consent of the other, of his own choice, or by his own act, avoid the agreement? The city had a right to insist upon the performance by Lescher & Melville of their contract, and they could not avoid fulfillment by pleading that one of the firm had subsequently thereto accepted the office of councilman. They had given bond to secure their performance. The section is a penal one. It prohibits an official from making or being interested in any contract, or doing any public work over which he would have, by virtue of his office, supervision and control. Being penal in its nature its restrictions may not be enlarged by judicial construction. Especially is this true when the effect of such construction would work no injury to the supposed wrongdoer, but would operate only to give to one party without pay the benefit of improvements which in equity he ought to pay for, and to make another and entirely innocent party pay the entire cost. We conclude therefore that there is nothing in these facts to relieve the defendant in error from liability.

One question more remains, and that is this: The contract following the ordinances provided that payment might be made in cash at a given price within thirty days, or in city scrip due January 1st following, at a price twenty-five per cent. higher. The city had the option to pay all or so much thereof as it might choose in cash. Lot-owners were given the same rights as the city. It is claimed that this conflicts with § 3 of art. 3 of the city charter, Laws 1867, page 122, which reads:

6. Contract for building sidewalks; stipulation varying price.

"SEC. 3. The mayor and council of any city governed by this act shall have no power to appropriate or issue any scrip, or draw any order on the treasurer for any money, unless the same has been appropriated or ordered by ordinance in pursuance of some object provided for in this act; *and the mayor and council shall have no power to sell or dispose of scrip, orders or bonds at less than their par value.*"

We have been in a good deal of doubt upon this point, but our final conclusion is, that the section does not apply. The charter provides that sidewalks should be paid for by assessments upon the lots. The city and the contractor contracted with reference to this ultimate liability. These assessments were collected at the time of the regular collection of taxes in the winter following. No payment could be enforced prior to that time. Any prior payment could be hoped for only by holding out some sufficient inducement therefor. The city was under no obligation to assume the primary liability and make immediate payment in cash, and then wait till the tax collections to reimburse itself. It could rightfully contract with reference to payment at such time as in the ordinary process of tax collections it could hope to realize funds therefor. Making a contract for payment at such time upon the best terms possible, it invaded no right of the lot-owner. If in addition it stipulated, with the assent of the contractor, that prompt payment at a much less sum should discharge the lot from further liability, it would seem as though it was entitled to the gratitude of the lot-owner instead of provoking a law-suit at his hands.

The judgment of the district court will be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.