Shauck, J.,
(dissenting).
Attention is due to the terms of the statute conferring upon municipalities the power of assessment which has been exercised in these cases. It provides that “where an improvement is made of an existing street, alley or other public highway, * * the costs and expenses shall be assessed by the council on the abutting * * lots and lands in the corporation * * by the foot front of the property bounding and abutting on the improvement. ’ ’ Section 2264, Revised Statutes. The assessment contemplated is not upon buildings, but upon lots and lands. It extends to all abutting lots, whether they be used and occupied or vacant. In the case of lots that are built upon, the power is not limited by architectural elevations nor by modes of ingress and egress. To make lots and lands subject to the assessment it is necessary only that they bound and abut on the improvement.
The relation of these words of the statute shows plainly enough, that the general assembly used them in their popular sense, regarding “bounding ” and “abutting-” as synonyms, and “front” as indicating the extent to which a lot is bounded by the highway for whose -improvement the assessment is made. And it is equally clear that the general assembly shared in the popular understanding that a corner lot fronts on both the streets by which it is bounded. That this is the sense in which these words are used is indicated not only by the provision quoted, but by many others relating to the control and improvements of municipal highways, suchas the requirements as to the frontage owned by those who sign petitions for the improvements, consents to the granting of franchises in streets, and the provisions re *461 lating to the cleaning of streets and the construction and maintenance of sidewalks and sewers. It is provided (Rev. Stat., sec. 2333) that no tax shall be imposed for the construction of a sidewalk upon property whose owners “have contracted and maintained sidewalks in front of such property.” Will it be said that the owner of a corner lot is exempt from the construction of a walk upon one front of his lot because he has constructed and maintained a walk upon the other? If it be answered that the use of the plural, “sidewalks,” prevents the application to that section of the views here expressed by the majority, the reply is that in the view of the legislature it requires a plurality of walks to occupy the fronts of corner lots.
The provisions of secs. 2379 and 2383, inclusive, are more than sug’gestive. They authorize municipalities to assess the expense of constructing sewers “upon the, feet front of the lots and lands, by or through which” they pass. Certainly a lot cannot front upon a sewer, as the word “front” is defined by the majority in these cases. It is provided in section 2383 that “the council may exempt from assessment, such portion of the frontage of any lot .having a greater frontage than its average depth, and so much of anj frontage of corner lots, as to it may seem equitable, and charge the deficiency caused by such exemption on the whole frontage tax pro rata.” In view of this provision, the' meaning of these words is not a matter of inference, but the subject of express declaration. Section 2269 prescribes rules for making assessments. As amended March 27, 1884, it contained the following provision: “And if, in making a special assessment by the foot front, *462 there is land bounding or abutting upon the improvement not subdivided into lots, or if there be lots numbered and recorded, boimding or abutting on . said improvement and lying lengthwise on said improvement, the council shall fix in like manner the front of such land to the usual depth of lots, so that it will be a fair average of the depths of lots in the neighborhood, which shall be subject to such assessment. ” Before the assessments whose validity is now considered (March 11, 1887), the section was amended by omitting the italicised portion thereof. That provision was inserted in the act of 1884, so that corner lots might not be assessed upon the whole of their long frontage. It was omitted from the act of 1887, so that they should thereafter be assessed upon such entire frontage. That this is the true legislative meaning of the terms under consideration, is scarcely less manifest in other provisions of the statute.
The use of the terms in this sense is not only in conformity with popular usage, but it is technically accurate. To front, is to be in a confronting or opposed position; to face toward; to meet.
A somewhat extended examination seems to warrant the observation that there is but one exception to the numerous cases in which, either by express holding or by clear implication, to front and to abut have been adjudged to be equivalent phrases within the meaning of assessment acts. The act under which extensive street improvements were undertaken in the city of Columbus (O. L. 72, p. 153), was held to be unconstitutional; but it was also held that those who promoted the improvement were estopped to assert its invalidity, and that as to them the act should be enforced according to its terms. Section 24 of the act pro *463 vided that the city council should “not have the right to authorize any improvement unless the owners of two-thirds of the feet front of the property abutting on any street or avenue to be improved shall petition the city council for the privileges of this act. ” In City of Columbus v. Sohl, 44 Ohio St., 479, this court held that the petition presented to the council in that case was sufficient, although the record showed that to reach that result it was necessary to count the lengthwise frontage of all the petitioners, even of those whose lots were vacant. The 14th section of the act provided that the cost of the improvement should be ‘ ‘ assessed equally per front foot upon the property fronting or abutting on the improvement,” and this court adjudged that assessments upon the entire long frontage of corner lots were valid even though they exceeded the value of the lots after the improvement was made. The provisions now under consideration (section 2264), were before this court in Lima v. Cemetery Association; 42 Ohio St., 128. It was held that a cemetery fronts upon an alley. The conclusion is based upon the obvious consideration that all lands front all the highways by which they are bounded. How that case could have afforded any other reason for the conclusion reached, does not appear.
In Cincinnati v. Seasongood, 46 Ohio St., 296, this court determined a question arising out of the amendment of section 2269 above shown. The question was whether the assessment for the improvement of a street upon which a corner lot fronts lengthwise is valid for the entire length of that frontage as provided in the act of March 1.1, 1887, or whether it should be restricted as required by the act of March 27, 1884. The Court reached *464 the conclusion that the extent to which the property could be assessed was determined by the statute in force at the time of the passage of the improvement ordinance. The contention of counsel and the decision of the court are vanity Unless, under the act of 1887, the assessments now before us are valid.
The report by Sayler, J., in Shehan v. The City of Cincinnati, 25 W. L. B., 212, shows that in that case the superior court, taking the same view of the statute and of Beasongood v. Cincinnati, as it has taken in rendering the judgments now under review (considered with these cases and reversed), adjudged that the assessment was valid upon the entire long frontage of a corner lot. At about the same time that court, under the same statute, rendered a similar judgment in Elder v. Cincinnati. The judgments whichit then rendered wereaffirmed by this court May 28, 1892. 27 W. L. B., 375.
In the City of Des Moines v. Dorr, 31 Iowa, 89, the validity of an assessment upon the entire long frontage of a corner lot was upheld. The court disposed of the point now considered as follows: “These premises are. situated at the intersection of Sixth and Walnut streets, being1 a corner lot with twenty-two feet front on the latter' street and one hundred and thirty feet front on the former. It will thus be seen that the lot has two fronts, as every corner lot necessarily has, because its face is opposite to and fronts on two different streets. ’ ’
The same conclusion was reached in Morrison v. Hershire, 32 Iowa, 271, the court saying: “Someof them are corner lots, and are so situated that the streets bounding each one of them upon its end and side are improved. These lots, in fact, front on *465 two streets — have a double frontage, and are, therefore, properly so assessed.”
The same conclusion was reached in Lawrence v. Killam, 11 Kan., 499, under a statute providing that “the assessments shall be made on all lots and pieces of ground abutting on the improvement according to the foot front thereof. ’ ’
In People ex rel. Taber v. Adams, 18 N. Y. Supp., 443, the frontage of a corner lot was thus determined: “A corner lot faces or fronts on two streets. It has a frontage on both streets, although the house built upon it may have its principal door for egress and ingress facing only one street.”
It would exhaust patience to cite all the cases in which this view of the words and phrases now under consideration has been taken. A few more of them are Bonsall v. Lebanon, 19 Ohio, 418; Springfield v. Green, 120 Ill., 274; Wilbur v. Springfield, 123 Ill., 400; Scott County v. Hinds, 50 Minn., 204; Michener v. Philadelphia, 118 Pa. St., 535; Joyes v. Shadburn, 13 S. W. R., 361; Weeks v. Milwaukee 10 Wis., 258; Tracy v. Chicago, 24 Ill., 500; Bacon v. The Mayor of Savannah, 91 Ga., 500. It is apparent that the legal meaning of these terms had been judicially settled before they were used in the statute before us. Here is no occasion for the application or discussion of rules of interpretation supposed to be of an equitable nature. The constitutional validity of the statute is confessed and the meaningof its provisions is entirely clear. Its enforcement according to its obvious intent is required by that subordination to the law which is due from all courts and especially from those that are not otherwise subordinate. Nor do the conclusions reached by. the majority in these *466 cases leave much occasion for pointing out the confusion that is to ensue. These observations, perhaps, sufficiently intimate the opinion that the judgments of the superior court of Cincinnati should be affirmed, those of the circuit court of Lucas county reversed; and that Haviland v. Columbus, should be overruled.