CITY OF OTTAWA v. LOUIS A. BARNEY, *et al.*

1. CITY ASSESSMENTS; *Street Improvements; Apportionment of Taxes—Lots—Blocks.* In cities of the second class assessments for paving, macadamizing, curbing and guttering streets must be to the center of the blocks extending along the streets improved.

·2. INJUNCTION; EQUITY; *Legal Taxes to be Paid or Tendered.* Where a lot is subject to assessment for such an improvement, but the assessment actually made is excessive by reason of the fact that all the lots liable therefor were not included, no injunction will lie until the amount really chargeable upon the lot has been paid.

*Error from Franklin District Court.*

INJUNCTION, brought by *Barney* and eighteen others, as plaintiffs, against *The City of Ottawa,* and *John P. Harris,* treasurer of Franklin county, as defendants. The body of the petition filed by said plaintiffs is as follows:

"The plaintiffs above named complaining of the defendants herein respectfully show to the court, and allege, that the defendant *The City of Ottawa* is a municipal corporation created under and by virtue of the law of the state of Kansas, and is a city of the second class, and that the defendant *John P. Harris* is the treasurer of the county of Franklin; that the plaintiff *Louis A. Barney* is the owner of lot No. 1 in block 72 as laid out and designated on a map of the town (now city) of Ottawa, recorded in the office of the register of deeds of said Franklin county, and within the corporate limits of said city of Ottawa, and that said block 72 abuts on Second street in said city, and that his co-plaintiffs are owners of lots similarly situated with reference to said Second street; that on or about the 19th of October 1870 certain persons owning property abutting upon Second street between Walnut and Hickory streets in said city presented a petition to the defendant *The City of Ottawa* praying that said Second street, between Walnut and Hickory streets as aforesaid, be paved, macadamized, curbed and guttered; that subsequently, and on or about the 22d of November 1870 the city council of said city passed an ordinance entitled 'An ordinance for improving Second street, from Walnut street to Hickory street,' in said city of Ottawa, as follows:

"*Be it ordained by the Mayor and Council of the city of Ottawa:*

"SEC. 1. That such portion of Second street lying between Walnut and Hickory streets shall be improved by making it correspond to the established grade, and by macadamizing, curbing, and guttering the same.

"SEC. 2. The city engineer is directed to make an estimate of the cᵗ of said improvement, and submit the same to the city council at th next council meeting on the 28th of November next. He is directed to estimate macadamizing six inches in depth.

"SEC. 3. Upon the submission of the report of the city engineer, the mayor and councilmen will proceed to appoint appraisers, advertise for bids, and take such other measures as are required by law to complete said improvement.

"SEC. 4. This ordinance shall take effect and be in force from and after its publication."

That said ordinance was approved by the mayor, and duly published on the 24th of November 1870; that said engineer made the estimate to the said city council on the 29th of November 1870, and on or about the 10th of December 1870 the said defendant *The City of Ottawa* entered into a contract with one Charles B. Gray for the macadamizing, curbing and guttering of said Second street from Walnut street to Hickory street; that in accordance with the law regulating the defendant *The City of Ottawa*, in paving, macadamizing, curbing and guttering all streets and avenues, and excavating, grading and filling for the same, and for all improvements of the squares or areas formed by the crossing of streets, the assessment should be made on all the lots and pieces of ground to the center of the block extending along the street or avenue the distance improved or to be improved, according to the assessed value of the lots or pieces of ground, without regard to the buildings or improvements thereon, which value should be ascertained by three disinterested appraisers appointed by the mayor and council; and it became and was the duty of said mayor and council to appoint said appraisers and instruct and direct them to appraise all the lots and pieces of ground to the center of the block extending along said Second street from Walnut to Hickory streets as aforesaid; that the defendant *The City of Ottawa* by its mayor and council did not so instruct or direct the appraisers by them appointed, as by law required, but on the contrary did instruct and direct them to appraise the lots immediately abutting upon and adjoining said Second street only to the depth of such lots respectively, being in most instances only the distance of twenty-five feet, and in no instance to the center of said block; that the lots and pieces of ground affected thereby are in blocks 58, 59, 71, and 72 in said city of Ottawa; that said blocks are all of them 450 feet in

depth, and to the center thereof respectively 225 feet from said Second street; that thereupon the appraisers so appointed as aforesaid made an appraisement only upon the lots abutting and adjoining upon Second street to the depth or width thereof; that plaintiff *Barney's* lot is located upon the corner of Main and Second streets, upon the streets so improved, and no appraisement was made beyond his said lot in said block, and only to the distance of twenty-five feet, (and his co-plaintiffs' lots lie in like manner on Second street;) that said work was performed by said Charles B. Gray, contractor, for the sum of $1,500, or thereabouts, and that subsequently, and on or about the 28th of August 1871, the said defendant city made a pretended assessment to pay the same; that the assessment so made covered and embraced only the lots abutting and adjoining said Second street, and to the depth in the block abutting on the same only to the distance of twenty-five feet or thereabouts, and in no instance to the center of the block, a distance of 225 feet, as by law was required to be done; that the amount of the assessment upon plaintiff *Louis A. Barney's* lot imposed as aforesaid, was the sum of $184.80, when in fact under an assessment authorized by law it would not have exceeded fifty dollars; and in like manner and proportion his co-plaintiffs' lots were affected; that the assessments made upon all other property upon said Second street are as much relatively in excess of a just and legal assessment as in the case of the plaintiff *Barney;* that immediately after the making of said illegal assessment the same was certified to the county clerk of Franklin county, and by him placed upon the tax levy for the year 1871, and the same is now in the hands of the defendant *Harris* as treasurer of said county for collection, and is an apparent lien against the property of these plaintiffs respectively, and that the defendant *Harris* will, unless restrained by this court, at the proper time offer for public sale and will sell the property of these plaintiffs as well as the property of others similarly situated, to pay and satisfy said illegal assessment, and produce great injury to these plaintiffs. Wherefore," etc.

The defendants demurred to said petition upon the ground that it did not state facts sufficient to constitute a cause of action. The case was heard at the March Term 1872 of the district court. The demurrer was overruled; and defendants not desiring to answer, a decree was entered in favor of the plaintiffs perpetually enjoining the collection of said assess-

ments.    From this order and decree the city and the treasurer appeal, and now bring the case here on error.

*C. R. Meigs, John W. Deford,* and *A. W. Benson,* for plaintiffs in error:

1. The district court erred in overruling the demurrer. The petition shows upon its face, that plaintiffs below have no cause of action.    It declares that they are the abuttors on Second street, that the city has assessed, and that the county treasurer is about to collect a special tax on their lots and pieces of ground, "extending along the street the distance improved," to pay for the improvement described.    It assigns, as their grievance, that the parcels of property lying between the abutting lots and pieces of ground, and the center-line of the blocks, ought also to be, but have not been, assessed and required to aid in paying for the same work.    The plaintiffs admit that the improvement has been completed, and that they ought to pay *some,* but have not paid *any part* of its cost.    Upon these facts, we contend that the petition shows clearly that the city has complied with the law in making the assessments, that the county treasurer has a right to collect them, and that the plaintiffs have no cause of complaint whatever.

2. The whole question depends upon the construction to be given to the 3d subdivision of §16, ch. 62, laws of 1871, p. 149.    Now, the contention of the defendants in error is, that the words, "extending along the street or avenue the distance improved or to be improved," relate to "block," while that of the plaintiffs in error is, that they refer to "lots and pieces of ground."    The statute, we maintain, is to be understood as though it ran thus: "The assessments shall be made to the center of the block, on all lots and pieces of ground extended," etc.    That is to say, that in case any lot or piece of ground, abutting on the street improved, extends back into the block beyond its center-line, the assessments shall be made according to the value of only so much of such lot or piece of ground as lies between the center-line and such street — it

being, no doubt, the theory of the law, that all that part of the property lying further back from the street than the center-line of the block, cannot be specially benefited by the improvement, or that when it runs clear across the block it ought to be assessed, if at all, only for such improvements as may be made at the other end. That such is the true intent of this act is apparent from its language. The construction put upon it by the defendants in error makes it absurd and unjust; and "every interpretation that leads to an absurdity, ought to be rejected." Dwarris on Stat., 128, 207. If the legislature had intended, as plaintiffs below argue, to impose the special tax on all the parcels of property, whether abutting or not, situate between the streets improved and the center-lines of the blocks adjacent to the improvement, it would not have used the phrase, "to the center of the *block* extending along the street or avenue *the distance improved.*" There is not one case in a thousand in which any single block extends "along the street the distance improved."

3. The view of the statute contended for by plaintiffs below would render the law unconstitutional and void. "Local assessments," says Sharswood, J., "can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the property assessed, *and to the extent of those benefits.*" "Assessments on property peculiarly benefited by local improvements, and *in consideration of such benefits,* are constitutional — thus far have the judicial decisions in this and other States gone and no farther." *Hammet v. Philadelphia,* 8 Am. Law Reg., N. S., 411; id., March 1871, p. 151; 29 Ind., 220. The principle of this power of special assessment is to "compel every lot to build the street in front of it." 10 Wis., 261. The word "assessment," as used in § 5, art. 12, of the Kansas constitution, is "admitted to mean charges upon *adjacent* property for improvements." *Hines v. Leavenworth,* 3 Kas., 186. "The legislature shall provide for a uniform and equal rate of assessment and taxation." Const., art. 11, § 1. That assessing, at the same rate per cent., these lots, abutting on Second street, the distance improved,

at their assessed value, is taxing them at an equal and uniform rate, for a direct and peculiar benefit (and in proportion thereto) accruing to them from such improvement, is a self-evident proposition. And that the owner of a "lot entirely off of and excluded from the street" is not as much benefited by the improvement as an abuttor, is equally self-evident. 29 Ind., 224.

4. But plaintiffs' petition is fatally defective, in not alleging that they have paid so much of the assessments on their respective lots as they admit to be just. Am. Law Reg., April, 1872, p. 208.

5. Plaintiffs' petition is bad for want of equity. It comes too late. They stood by and saw the appraisement made and the work done, without objection, and interposed their injunction-suit when it only remained to pay for the improvement made upon their property, at their own request. There is no allegation or pretense excusing this delay. 15 Ohio St., 64; 34 Ind., 140; 10 Cush., 252; 30 Ind., 192.

*Sears & Maxwell,* for defendants in error:

1. The questions in this case arise upon the construction of the third clause of the second subdivision of § 16, Laws of 1871, pp. 148, 149. Under this section cities of the second class (the city of Ottawa being one of such,) are empowered to levy and collect taxes; 1st, for general revenue purposes, etc.; 2d, for the purpose of opening and improving streets, avenues and alleys, making sidewalks, etc. Under the 1st clause of the 2d subdivision, a general assessment upon all the property of the city for the purpose of opening, widening and grading all streets and avenues, for foot-walks across streets, etc., may be made. These seem to be intended as those general improvements benefiting the city at large, as contradistinguished from such improvements as would benefit peculiarly some special locality. The 2d subdivision then provides that for making and repairing sidewalks, the assessments shall be made on all lots and pieces of ground *abutting* on the improvement, according to the front foot thereof. This clearly is upon the assumption that the improvement confers

not only a local, but as well an individual benefit.    Then follows the clause giving rise to the questions in this case:

"*Third,* For paving, macadamizing, curbing and guttering all streets, etc.,    *    *    *    and for all improvements of the squares and areas formed by the crossing of streets, the assessments shall be made on all lots and pieces of ground to the center of the block, extending along the street or avenue the distance improved or to be improved, according to the assessed value of the lots or pieces of ground without regard to the buildings or improvements thereon," etc.

This is not an improvement like those mentioned in the 1st clause of the 2d subdivision, in which benefit to the whole city is assumed; nor is it one like the making a sidewalk in front of a lot, in which an individual as well as a general benefit is assumed; but is an improvement in which a local, as contradistinguished from a general, or general and individual benefit is assumed; assumed (rationally) as a benefit to the *square,* and for which the *square* is assessed to the *center of the block,* or square, as the former is the synonym of the latter.    This view is strengthened by the provision in § 17, and in order that it should not be classified as a general improvement, it is in that section expressly provided, that all improvements comprehended in this subdivision shall be known as "special assessments for improvements."

2. It is maintained by the plaintiffs in error, that to tax the abutting and non-abutting lots alike according to their assessed value, would not be equal and uniform, and therefore would be unconstitutional.    To this it is answered that exact uniformity in the sense of perfect equality may or may not be attained under this law, but it is scarcely within the compass of human power to attain exact equality of public burdens, under any law.    1 Swan, 181.    Uniformity in the *locality* assessed is all that is required, and all that is attainable; and in commenting on a clause in the Indiana constitution, similar to ours, the court say: "Its meaning is that the *rate* of assessment and taxation shall be uniform and equal throughout the *locality* in which the tax is levied."    27 Ind., 230.

3. Again, it is said the petition comes too late.    "They stood

by and saw the appraisement made and the work done without objection." What else could they do but stand by? The city had the perfect right to improve the street, and the plaintiffs had no right to interpose any objection. It was only of the assessment of their property to pay for it, that they had a right to complain, and it was of the collection of an illegal assessment that they did complain; and this they had the perfect right to do at any time before it was collected.

The principal questions raised in this case, were substantially settled in the case of *Hines v. The City of Leavenworth*, 3 Kas., 186. The act therein approved contained in substance the same restrictions, upon the abuse of the taxing power, as the act now under consideration, and the court hold that it is lawful to assess the costs of improvements *upon adjacent property, to the center of the block.*

The opinion of the court was delivered by

BREWER, J.: The city council of Ottawa, a city of the second class, pursuing the proper steps, caused one of its streets to be macadamized, curbed and guttered, and thereafter attempted to collect the cost of such improvement from the property adjacent. Second street, the street improved, runs along the end of certain blocks and parallel with the lots therein, so that only the two end lots in each block touch the street. The city council holding that only the lots which touched and had frontage on the street were chargeable with the cost of the improvement, made the assessment accordingly. The defendants in error, owners of lots having such frontage, believing that all the lots to the center of each block abutting on the improvement were liable, brought their action of injunction to restrain the collection of the entire assessment from their lots. Which was right? The statute controlling reads as follows: "For macadamizing, the assessments shall be made on all lots and pieces of ground to the center of the block extending along the street or avenue the distance improved or to be improved, according to the assessed value of the lots and pieces of ground," etc. Laws of 1871, p. 149,

§ 16, clause 3.    Counsel for plaintiff in error thus state their claim:

"Now, the contention of the defendants in error is, that the words, 'extending along the street or avenue the distance improved or to be improved,' relate to 'block,' while that of the plaintiffs in error is that they refer to 'lots and pieces of ground.' The statute, we maintain, is to be understood as though it ran thus: 'The assessments shall be made to the center of the block, on all lots and pieces of ground extending,' etc.    That is to say, that in case any lot or piece of ground abutting on the street improved extends back into the block beyond its center-line, the assessments shall be made according to the value of only so much of such lot or piece of ground as lies between the center-line and such street—it being, no doubt, the theory of the law, that all that part of the property lying further back from the street than the center-line of the block cannot be specially benefited by the improvement, or that when it runs clear across the block it ought to be assessed, if at all, only for such improvements as may be made at the other end."

If the statute ran, as the counsel say it should be understood, it would doubtless carry the meaning they claim. But the trouble is, it does not so run, but an entirely different way.    The words, "extending along the street or avenue the distance improved or to be improved," form an adjective-clause which modifies obviously the adjacent noun.    It is a general rule of construction that an adjective or an adjective-clause qualifies the nearer rather than the more remote substantive; and though this rule is often disregarded, yet when there is nothing else to decide, this will determine which of two nouns is the one qualified and limited.    But we need not rest upon this rule of construction alone.    A block is defined by Webster as "a square or portion of a city inclosed by streets, whether occupied by buildings or composed of vacant lots."    It is a portion of ground surrounded by streets.    Taxing to the center of the block for the improvement of the surrounding streets makes each portion bear its proper share of the total burden.    Otherwise the central lots will bear only a part of the burden of

the improvements in the front of the block, while the end lots will bear an equal share of this and the whole burden of more on the side of the block. This would be evidently unfair unless the central lots received no benefit from the improvements on the side. But the fact is the whole block receives benefit from the improvements made anywhere around it. Especially is this true of the "squares and areas formed by the crossing of streets," the improvement of which benefits the front of the block as much as the side; and yet the cost of this is collected in the same way. The end lots may receive more benefit from improvements on the side, but being valued more highly will pay more for those as well as for the improvements in front. There is a certain sort of relationship between streets and blocks, whose existence we all appreciate, no matter how illy it may be in fact recognized. The streets are for the service and use of the blocks; and the idea is, that there should be such an adjustment of their numbers and size that each portion of the block should receive all needful service from the streets. Of course, the use to which the blocks are put, whether for residences, stores, or factories, may change the measure of adjustment; but still the fact of the relationship remains unaffected. With that fact existing then, that so much and only so much of ground is included in the block as can be properly served by the streets, it would seem but a natural converse that the cost of improving the streets should be cast on the block. Such we think is the rule the legislature ought to establish — such, the ordinary laws of construction show, they have established. So far as regards the constitutionality of such a rule we need only refer to the case of *Hines v. City of Leavenworth*, 3 Kas., 203, 204. In reference therefore to the main question the views of this court coincide with those of the defendants in error and the learned judge of the district court.

But upon another ground the judgment is erroneous. The petition shows that the lots of defendants in error were subject to assessment for this improvement. It alleges that the assessment actually made upon one lot was $184.80, while a legal

assessment would not have exceeded fifty dollars, and that a similar proposition existed as to the other lots. It nowhere alleges payment or tender of the amount due under such legal assessment. He who seeks equity, must do equity. The plaintiffs below admit they owe something, but deny that they owe all that has been assessed. Before injunction will lie under these circumstances they must pay or tender what they owe. *Gulf Rld. Co. v. Morris*, 7 Kas., 210; *Comm'rs of Leavenworth v. Lang*, 8 Kas., 284; *Merrill v. Humphrey*, Am. Law Reg., April 1872, p. 208.

The judgment of the district court will be reversed, and the case remanded with instructions to sustain the demurrer.

All the Justices concurring.