### COMM'RS OF JOHNSON CO. v. FRANK R. OGG.

COUNTY ATTORNEY; · *Compensation; Ten-per-Cent. for Collections.* A railroad company commenced an action against the county treasurer and the sheriff of Johnson county, for a perpetual injunction to restrain the collection of certain taxes. The injunction was refused, and judgment was rendered in favor of the officers and against the railroad company for costs. The case was then taken to the supreme court by the railroad company, and there the judgment of the court below was affirmed. The county attorney of Johnson county attended to the suit for the treasurer and sheriff as county attorney, but without being employed by any person. The railroad company then paid said taxes, but neglected to pay the ten-per-cent. penalty which had at that time accrued thereon. The county attorney then filed a precipe with the treasurer for a tax warrant to collect said penalty. The treasurer issued the warrant and delivered it to the sheriff, and the sheriff, by virtue of the warrant, collected said penalty and paid it over to the treasurer: *Held,* That said taxes and penalty were collected under the law and not under said judgment; that said precipe is unknown to the tax laws, and amounted to nothing more than an opinion of the county attorney; that 'the treasurer and sheriff collected said taxes and penalty, and not the county attorney, and that the county attorney is not, under the statutes, entitled to ten per cent. of said taxes and penalty for collecting the same.

*Error from Johnson District Court.*

ON the 20th of February, 1873, *Ogg,* who was then county attorney, presented to the *Board of County Commissioners* the following claim:

THE COUNTY OF JOHNSON,
          To FRANK R. OGG, ............. DR.,
  To $1,318.37, the same being ten-per-cent. of $13,183.73 collected June 13, 1872, and February 6, 1873, in favor of Johnson county, State of Kansas, in the case of Mo. River, Ft. Scott & Gulf Rld. Co., against J. Henry Blake, Treasurer, and A. J. Clemmans, Sheriff of said County of Johnson, and paid to the County Treasurer on the day of collection.

This claim, duly verified, was presented to the plaintiff for allowance, and was disallowed, and thereupon *Ogg* appealed to the district court. Trial at the April Term 1873 of said court, and judgment in favor of *Ogg* for the amount claimed by him. The *Board of Commissioners* bring the case here on error.

*Devenney & Green,* for plaintiff in error:

We contend that Ogg is not entitled to any compensation, independent of his salary as county attorney, for the alleged services performed. The record shows that the property of the Missouri River & Fort Scott Railway within Johnson county was subject to taxation for the year 1870; that the tax was duly levied for said year; that the proper authorities were about to collect the taxes pursuant to said levy, when on the 6th of January, 1871, said Railway Company applied for and obtained an injunction against the county treasurer and sheriff, restraining them from collecting such tax. The district court, on demurrer, held that the Railroad Co. had no cause of complaint, and this court affirmed the action of the district court. Ogg, as county attorney, appeared in behalf of the officers—the treasurer and sheriff—both in the district court and supreme court, assisted by private counsel employed by the plaintiff in error, to defend the interests of state and county. There was no action brought by the state or county against the Railroad Co.; there was no money judgment rendered by the district court against the Railroad Co.; there was no money collected by the sheriff on execution against the Railroad Co. When this court affirmed the action of the district court, it left the matter of taxes just where it was before the injunction was obtained; and the Railroad Co. then being delinquent it was the duty of the treasurer to issue his warrant to the sheriff to collect the amount with penalty, without the aid or any action on the part of the county attorney. (See ch. 107, § 123, Gen. Stat. of 1868.) And the sheriff was required by the same law to collect and pay over to the county treasurer the amount of the tax warrant within sixty days from its date. If the county attorney preferred to be officious, or really believed it to be his duty to file a precipe with the treasurer for the issuance of a tax warrant, and that too after the Railroad Co. had paid $11,985.21 without warrant, he cannot, we submit, by any such means impose a liability on the county to pay him

therefor. A mere suggestion by the county attorney to the treasurer to issue a tax warrant in such case would clearly be embraced within his general duties as such county officer.

There is no claim on the part of Ogg that the board ever employed him to look after the case in the supreme court, independent of his employment as county attorney. The alleged services were voluntary, if not performed as county attorney, and the plaintiff in error is not legally liable for what he did. 9 Ind., 296.

*J. L. Wines, G. W. Wilson,* and *F. R. Ogg,* for defendant in error:

1. The only question presented for the consideration of the court is, whether the evidence shows a "collection" as contemplated by § 139, ch. 25, Gen. Stat. If this question is decided affirmatively the judgment of the district court must be affirmed. What is the true definition of the word "collected," in the connection in which it is found in the statute? What the legislative intent was must be determined from what the legislature has said, if the language is free from doubt and obscurity. That the legislature has used a word in its usual and ordinary sense, is clearly presumed, in the absence of some positive statutory limitation or restriction. If a word is so used by the law-making power, the necessity for interpretation and construction does not arise. We can arrive at the true definition of the word "collected" from an examination of the words "collector" and "collect." "A collector is a person appointed or elected to receive taxes. Also a person appointed by a private person to collect the debts due him." (1 Bouvier's Law Dict., 241.) The definition of the word "collect," is, "To gather money or revenue from debtors; to demand and receive; as, to collect taxes; to collect the customs; to collect accounts or debts." Webster's Dictionary. In view of these definitions it will not for a moment be contended that there must be an actual, manual handling of the amount realized in order to constitute a "collection." "A 'collection' might be defined to be the payment, after suit, or by reason of the probable commencement of litigation, to any

person authorized to receive a sum claimed to be due from one person to another, without regard to the question as to whether it was paid upon an express or an implied contract." It might also be added that in case of litigation it is entirely immaterial who is plaintiff or defendant, so the question of liability is settled.

In the case now before the court the defendant in error may not have actually handled the money collected, yet he was, in view of the above definitions, and in view of § 139, before referred to, a collector. The railroad company denied the existence of any liability in favor of the county; on the other hand the county claimed the right to receive and collect from the railroad company a certain amount. The only question settled by the litigation between the county and the railroad was the one of liability of the one party to pay, and the right of the other party to collect the amount claimed. In this litigation the defendant in error appeared in his official character, as he was in duty bound to do, to look after the interests of the county. The final decision was against the railroad company, and under this decision the amount claimed was paid into the county treasury. If this was not a "collection" within the meaning of § 139, it is difficult to imagine a state of facts which would constitute a collection.

It is true, the action of the railroad company was not prosecuted against the county by name, but it clearly appears from the evidence that the county had a direct interest in the event of the suit, and in all such cases it is made the duty of the county attorney to appear. Section 136, ch. 25, Gen. Stat.

2. It may also be urged that there was no collection as against the railroad company, so as to entitle the defendant in error to a commission on the amount received, for the reason that there was not a judgment for any given amount rendered in favor of the county. It will be observed, however, from the evidence, that the case was decided upon the demurrer filed by the county of Johnson, and in sustaining that demurrer the court dissolved the injunction, and in that manner the whole question touching the liability of the rail-

road company was decided. However, we think that in the case of the railroad company against the treasurer and sheriff of Johnson county, there was, in the fullest sense of the word, a judgment rendered. A judgment is a contract. Freeman on Judg., §4.

After the decision of this court upon the question of the liability of the railroad company to pay a certain sum to the county, a warrant was issued by the county treasurer pursuant to the order of defendant in error as county attorney. This warrant was placed in the hands of the sheriff of the county. A part of the taxes due was paid after this warrant was issued, before levy made; and the balance was collected by means of a levy and sale of property, as upon execution.

3. The moment defendant in error became the county attorney of Johnson county, that moment there arose, by virtue of the statute, an express contract between the parties to this proceeding, that plaintiff in error should pay defendant in error a ten-per-cent. commission on all moneys collected through his official interposition. It is well settled that a contract between the state or county and an individual must be construed as contracts between private parties. 2 Chand., (Wis.,) 182; 16 Wis., 347.

It has been decided in this state that a county attorney is not required to go out of his county to look after the interests of the county. If he does, he is entitled to compensation. 9 Kas., 307.

4. Defendant in error, as county attorney, is paid a salary under the section of the statute referred to, for the usual, ordinary and well-known duties of his office. In addition to this salary he is allowed a commission on all moneys collected for the state or county. This is not a certain and well-known compensation, for the reason that it depends upon the amount of a certain kind of professional work there is for him to do. It is entirely uncertain in its character. The object of the legislature then evidently was to provide a compensation for the prosecuting officer of the county "for such work as did not fall within the established and settled duties of his office,"

and with this view it was enacted that he should have ten-per-cent. commission on such moneys as should be collected by and through his official action. And we claim that in the payment by the railroad company, and the receipt by the county of the amount of taxes for the year 1870, paid after a protracted litigation, instituted for the express purpose of deciding the liability of the one party and the rights of the other, was a "collection" within the meaning of § 139 of ch. 25 of Gen. Stat. of 1868, and that defendant in error as the county attorney of Johnson county is entitled to a commission of ten per cent. on the amount so collected.

The opinion of the court was delivered by

VALENTINE, J.: On the 6th of January, 1871, taxes were due in Johnson county for the year 1870, from the Missouri River, Fort Scott & Gulf Railroad Company, amounting to the sum of $11,985.21, and the proper officers of that county were about to proceed to collect the same. The railroad company however on that day commenced an action against J. H. Blake, county treasurer of said county, and A. J. Clemmans, sheriff of said county, to perpetually enjoin them from collecting said taxes; and on the 7th of January, 1871, the judge of the district court for said county granted a temporary injunction to restrain the collection of said taxes pending the litigation. Afterward the petition of the railroad company was amended, and on the 28th of August, 1871, the defendants demurred to the amended petition. The court below sustained the demurrer, rendering judgment for costs against the railroad company, and in favor of said Blake and Clemmans, and dissolved said temporary injunction. The railroad company then brought the case to this court on petition in error, and in this court the judgment of the court below was affirmed. (For a report of that case see *Gulf Railroad Company v. Blake,* 9 Kas., 489.) In all the foregoing proceedings the present defendant in error, F. R. Ogg, acted, along with other counsel, as counsel for Blake and Clemmans. He was not however employed by Blake or Clemmans, nor by the county commis-

sioners; but he acted in the defense of said suit in the capacity of county attorney of Johnson county. After said suit was determined in this court the railroad company paid said taxes to the treasurer of Johnson county, but neglected to pay the ten-per-cent. penalty which had then accrued on said taxes. The defendant in error, Ogg, then as county attorney filed a "precipe" with the county treasurer for a tax warrant to be issued for the collection of said tax penalty. The warrant was issued by the treasurer of said county to the sheriff, and the sheriff collected the said penalty from the railroad company and paid it over to the treasurer. The ten-per-cent. penalty amounted to $1,198.52 and the taxes and penalty in the aggregate amounted to $13,183.73. The defendant in error, Ogg, now claims that he is entitled to ten per cent. of the whole amount, to-wit, $1,318.37, for his said services as county attorney. He first filed his claim for that amount with the county commissioners, but they refused to allow the same or any part thereof. He then commenced this action in the district court for that amount, and the district court, upon an agreed statement of facts, rendered judgment in favor of Ogg, and against the county for the whole amount claimed, with costs. Is such judgment correct? This is the only question in the case. Ogg does not claim this amount as a part of his salary as county attorney. Nor does he claim it under any contract made with the county commissioners. Indeed, he does not claim it under any contract made with any person or persons. He simply claims it under that provision of the statute which says: "County attorneys shall be allowed ten per cent. on all moneys collected by them in favor of the *state* or *county.*" (Gen. Stat., 285, § 139.) And he claims this in addition to his salary as county attorney, and in addition to all other fees or compensation allowed by law. Whether all of said taxes belonged to the state and county is not shown by the record, (they may have belonged to some other fund,) but for the purposes of this case we shall assume that they all belonged to the state and county. Or rather, we shall assume that

they all belonged to the county; for if any portion of them belonged to the state then a very serious question would arise whether the county is liable for the whole amount or not. That is, whether the county is liable to pay out of its own fund the ten-per-cent. allowed by the statute for collecting the state fund, or whether the state fund should not bear its proportion. Then with these assumptions the whole question in this case depends upon whether said payment of said $13,183.73 by the railroad company to the treasurer and the sheriff of said county was a *collection* of the same or any part thereof by the said county attorney, Ogg, within the meaning of said statute. That is, did the county attorney collect the taxes paid by the railroad company to the county treasurer, and did the county attorney collect the penalty paid by the railroad company to the sheriff? The court below decided that the county attorney collected both the taxes and the penalty. We think however that the county attorney did not collect either. None of the money ever passed into his hands, or through his hands, and he had no authority to receive it. But he claims that he collected said money by virtue of said injunction suit, and that he collected a portion of the same by virtue of said "precipe." Now neither the state nor the county was a party to said injunction suit. No judgment was rendered in favor of or against either the state or said county. Neither the state nor the county employed said county attorney. Indeed he was not employed at all. The suit was between the railroad company on the one side, and said Blake and Clemmans on the other; and no judgment was rendered even in favor of Blake and Clemmans, except for costs. The judgment did not give Blake and Clemmans or either of them any right to collect said taxes, or to collect said penalty. It did not give or pretend to give them any rights which they did not have before. They could not have had an execution issued on said judgment for the collection of said taxes and penalty. And they did not even attempt to have any such execution issued. They did not collect, nor attempt to collect said taxes and penalty by virtue of said

judgment, and they had no authority to do so even if they had so attempted. The taxes and penalty were collected wholly under the statute, independently of said judgment, and were so collected in the same manner (with the exception of said "precipe,") that they would have been collected if no such suit as said injunction suit had ever been commenced. (Gen. Stat., 1059, § 123; Laws of 1869, p. 251, § 15; Laws of 1871, p. 234, § 11.) The said precipe filed by the county attorney with the county treasurer was a nullity. Or at most it could be treated only as an opinion of the county attorney that a tax warrant should be issued. It is an instrument unknown to the tax laws. It gave to the county treasurer no powers. It could perform no office nor function, other than as a mere opinion of the county attorney. It did not make the tax warrant afterward issued any better or worse than such tax warrant would have been if no such precipe had ever been filed. It did not make it any more obligatory upon the treasurer to issue said tax warrant than it was before under the law. It simply left the treasurer with just the same rights and powers that he had before the precipe was filed, and with just the same rights and powers that the treasurer would have had if no injunction suit had ever been commenced. It may be true that said injunction suit determined incidentally that said taxes were legal, and that the treasurer had a right to collect the same; but such a determination could only be incidental. The direct determination was that the railroad company was not entitled to an injunction in the case. This determination might have been for other reasons than that the taxes were legal. Injunction to enjoin the collection of taxes is often refused notwithstanding that the taxes or some portions thereof may be illegal. (*Sleeper v. Bullen*, 6 Kas., 300, 306, 309; *Ottawa v. Barney*, 10 Kas., 270, 279, 280; *Gulf Rld. v. Morris*, 7 Kas., 210, 229 to 232; *City of Lawrence v. Killam*, 11 Kas., 499; *Gilmore v. Fox*, 10 Kas., 509; *Hudson v. Atchison Co.*, 12 Kas., 140.) The refusal of the injunction in such a case is simply a negative judgment, and gives to the defendants no affirmative

rights except to collect their costs. The refusal of an injunction to restrain the collection of taxes does not confer any right upon the officers to collect the taxes. It simply leaves the officers with just such rights as they had before.

The judgment of the court below will be reversed, and cause remanded with the order that judgment be rendered in favor of the defendant below and against the plaintiff below for costs.

All the Justices concurring.