MARTIN STEWART v. THE BOARD OF COMMISSIONERS OF
WYANDOTTE COUNTY et al.

1. INJUNCTION — *Illegal Tax — Estoppel — Equity.* Although ¶ 253 of the
civil code gives an enlarged or additional remedy to the tax-payer,
yet, if the tax or assessment is illegal, and it is shown that the prin-
ciples of estoppel apply against the tax-payer, the jurisdiction of
the court under the statute is to be exercised upon equitable princi-
ples, and the tax-payer, to succeed, must exhibit a case in which,
upon the merits, he is entitled to the equitable relief demanded.

2. COUNTY ROAD — *Petition for Improvement — Collection of Tax — No
Injunction, When.* A land-owner who voluntarily invokes for his
benefit the provisions of chapter 214, Laws of 1887, for the purpose
of improving a county road contiguous to his land; signs, circu-
lates and presents a petition under the provisions of that statute
to the board of county commissioners, and asks for the improve-
ment subsequently made; lives in the immediate vicinity of the im-
provement during its entire progress; is present upon the work at
different times; knows that the petition in insufficient under the
statute, and the improvement greatly enhances the value of his prop-
erty, much in excess of any tax or assessment attempted to be im-
posed, is not entitled to an injunction to restrain the collection of
such tax or special assessment, although the improvement is made
without any authority whatever. A party cannot invite and encour-
age a wrong, and then ask a court of equity to protect him by an
injunction from the consequences of that wrong.

*Error from Wyandotte District Court.*

ACTION brought by *Stewart,* on November 10, 1888, against
the *County Board* and others, to restrain the collection of a
certain tax. Judgment for the defendants for costs, on Sep-
tember 22, 1889. The plaintiff brings the case to this court.
The material facts are stated in the opinion. The case was
heard on October 10, 1890, and at the session of the court in
January, 1891, it was decided, and there was filed herein an
opinion, (syllabus and opinion by SIMPSON, C.,) recommend-
ing that the judgment of the district court be reversed, and
the case remanded for a new trial. By the court, it was so
ordered — all the justices concurring. The syllabus therein
formulated and declared to be the law is as follows:

"1. Under chapter 214, Laws of 1887, 'An act providing

for the improvement of county roads,' the petition required by § 1 must be signed by a majority of the resident land-holders within one-half mile on either side of a regularly laid out road within the terminal points mentioned, or the board of county commissioners acquires no jurisdiction to order the improvement prayed for.

"2. A land-holder who signed a petition for the improvement of a county road, under chapter 214, Laws of 1887, is not estopped from asserting a jurisdictional defect in the assessment proceedings by the act of signing."

On January 30, 1891, the defendants in error filed a motion for a rehearing, which was argued on the 6th of February following. On May 9, 1891, the court sustained the motion, and filed herein the new syllabus *supra*, and the opinion *infra*.

*Hutchings & Keplinger*, for plaintiff in error.

*J. B. Scroggs, J. O. Fife, A. L. Berger*, and *Winfield Freeman*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: In the former opinion handed down in this case, prepared by SIMPSON, C., it was asserted that Martin Stewart, the resident land-owner, who signed the petition for the improvement of the county road complained of, was not estopped by his acts or conduct from successfully prosecuting his action of injunction to restrain the collection of the special taxes levied on his land to pay the cost of grading and paving the county road known as the "Quindaro boulevard." We have reëxamined that opinion and various decisions affecting the question involved, and we are now of the opinion, without passing upon the constitutionality of the statute, that facts are disclosed in the record which amount to an estoppel against Stewart. The special facts found by the trial court show that Stewart lived in the immediate vicinity of the work during its entire progress; that he was present upon the work at different times; that he signed the petition presented to the county board, and circulated and filed it with the board; that he knew the contents of the petition; that he knew a majority

of the resident landholders within the half-mile limit had not signed the petition; that he presented the petition to the board, and asked that the improvement be made; that he knew of the fatal defect in the petition; that he knew that his property would be taxed for the improvement; that he knew at the time the work was being done that one-inch cypress plank was being used therefor; that he complained to the commissioners about using one-inch instead of two-inch plank; that at the time the apportionment was made, he filed a protest against the cost being taxed to him; that his property lies contiguous to the improved road, and was greatly enhanced in value by reason of the improvement, much in excess of the tax imposed upon him for the improvement.

In *Sleeper v. Bullen*, 6 Kas. 300, it was decided that—

"A contract made by the city council, under chapter 70, Laws of 1867, for grading a street in Leavenworth city, without a sufficient petition having first been presented to the council, is, and all the proceedings under such contract are, void as against the lot-owners. A lot-owner who has notice of all the proceedings and makes no objection, but, on the contrary, encourages the contractors to do the grading, and tells them that they shall be paid therefor, is not entitled to an order of injunction to restrain the collection of a special tax levied on his lots to pay for said grading."

In *Lee v. Tillotson*, 24 Wend. 337, it was held in New York that—

"A party may waive a constitutional as well as a statute provision made for his own benefit. The contrary argument would deprive a criminal of the power to plead guilty, on the ground that the constitution had secured him a trial by jury."

In *Ferguson v. Landram*, 5 Bush, 230, it was said:

"Upon what principle of exalted equity shall a man be permitted to receive a valuable consideration through a statute procured by his own consent, or subsequently sanctioned by him, or from which he derives an interest and consideration, and then keep the consideration and repudiate the statute as unconstitutional."

In *Daniels v. Tearney*, 102 U. S. 415, it was also said that —

"It is well settled as a general proposition, subject to certain exceptions not necessary to be here noted, that, where a party has availed himself for his benefit of an unconstitutional law, he cannot, in a subsequent litigation with others not in that position, aver its unconstitutionality as a defense, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such cases the principle of estoppel applies with full force and conclusive effect. . . . The principle of estoppel thus applied has its foundation in a wise and salutary policy. It is a means of repose. It promotes fair dealing. It cannot be made an instrument of wrong or oppression, and it often gives triumph to right and justice, where nothing else known to our jurisprudence can, by its operation, secure those ends. Like the statute of limitations, it is a conservator, and without it society could not well go on."

"A party is, as a general rule, not estopped to deny the constitutionality of the statute which assumes to confer authority to order improvements and direct assessments by a mere failure to actively oppose improvements which he knows are being made. This is obviously the correct rule, for without a valid statute there can be no jurisdiction, and parties are incapable of conferring jurisdiction of the subject, although they may confer jurisdiction of the person. But when the doctrine is pressed farther there is much difficulty, for the rule as now established by the weight of authority is, that a party who procures or actively aids in procuring the enactment of an unconstitutional statute and accepts benefit under it cannot question its validity. It would require a very clear and strong case to warrant the application of this rule to street assessments, and yet such a case is conceivable. The fact that such a rule exists proves that the courts will carry the principle of estoppel to great lengths in the interests of justice, and proves, also, that the courts which confine the operation of the principle of estoppel in assessment cases to mere irregularities have gone astray." (Elliott, Roads and St. 422; *The State v. Mitchell*, 31 Ohio St. 529; *Burlington v. Gilbert*, 31 Iowa, 356; *Motz v. Detroit*, 18 Mich. 526.)

That "the principles of estoppel apply where the proceedings are questioned on the ground of the unconstitutionality

of the statute under which they are had, as well as where they are sought to be impeached upon other grounds," is not an open question. (See *Counterman v. Dublin Tp.*, 38 Ohio St. 515; *Tone v. Columbus*, 39 id. 281, 308; *The State v. Mitchell*, supra.)

Under the decision in *Sleeper v. Bullen*, supra, the special taxes levied for grading were held illegal, and it was further held that the city had no legal right to sell the lots of Sleeper, yet Sleeper was denied an injunction in that case, because he had encouraged the contractors to do the grading. (See, also, *Ritchie v. City of South Topeka*, 38 Kas. 368.)

This case is unlike *Barker v. Comm'rs of Wyandotte Co.*, ante, p. 681, because in that case Barker refused to sign the petition for the improvement when it was presented to him, and is also unlike the case of *Comm'rs of Wyandotte Co. v. Barker*, ante, p. 699, because in that case it was sought to estop Barker by mere silence and inaction. Here, Stewart instituted the proceedings which led to the improvement and the assessment complained of. He was a willing and active consenting party in the whole matter. Whether, therefore, the tax be legally valid or not, there is no good ground upon his part for claiming the interposition of a court of equity by its extraordinary process of injunction to stay the collection of the tax against his property. (*Tone v. Columbus*, 39 Ohio St. 281, 308, and cases there cited; Cooley, Tax. p. 573.)

It is claimed, however, that this is a statutory action, having been brought under § 253 of the civil code, and therefore that it is not a suit in equity. Ohio has a statute somewhat similar. It was said in *Steese v. Oviatt*, 24 Ohio St. 248, that—

"The act of May 1, 1856, (S. & C. Rev. St. 1151,) gives to the courts jurisdiction to restrain the collection of taxes illegally assessed; but the jurisdiction thus conferred is an equitable jurisdiction, and is to be exercised upon equitable principles. Proceeding under the statute, the party complaining is not required to show a case of threatened irreparable injury, or the absence of a remedy by ordinary legal proceed-

ings; but he must exhibit a case in which, upon the merits, he is entitled to the equitable relief demanded."

This case was followed in *Stephen v. Daniels*, 27 Ohio St. 527. It is there stated:

"That this is a statute creating new statutory rights of action not theretofore existing is, in the opinion of a majority of the court, quite clear. . . . The tax-payer, stripped of any valuable or practical remedy for the injuries inflicted under color of law and by authority of the state, was almost powerless. To provide a proper remedy was the object of this law. It was a legislative recognition of a fundamental duty enjoined by the constitution of the state, that, while the power to tax was essential to government, the duty of protecting the citizen from illegal exactions under the name of taxes, and under the forms of law, was not to be forgotten or neglected. It being, therefore, remedial in its character, it should receive that construction, if the words will reasonably admit, that will effect the manifest intention of the legislature and remedy the evil. It gives a remedy by injunction on the application of a single person taxed when none existed before. In his application he need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law, but only that the tax is illegal which is about to be assessed or collected. (*Steese v. Oviatt*, 24 Ohio St. 253.) It thus becomes apparent that a new equitable remedy was given by this statute."

In *Tone v. Columbus*, supra, it was said:

"Under section 24 of the act, the city council had no right to authorize the improvement until such two-thirds of the owners had petitioned the council for the privileges of the act. We have no doubt that this requirement of the law may be waived by the owners, or that they may by their acts, and under circumstances by their inaction, estop themselves from alleging its failure."

See, also, *City of Ottawa v. Barney*, 10 Kas. 270. In that case, Mr. Justice BREWER said:

"It alleges that the assessment actually made upon one lot was $184.80, while a legal assessment would not have exceeded $50, and that a similar proposition existed as to the other lots. It nowhere alleges payment or tender of the amount

due under such legal assessment. He who seeks equity must do equity. The plaintiffs below admit they owe something, but deny that they owe all that has been assessed. Before injunction will lie under these circumstances, they must pay or tender what they owe."

The cases of *City of Ottawa,* supra, and *City of Lawrence v. Killam,* 11 Kas. 499, were decided by this court after § 253 of the civil code had been adopted. We must therefore conclude that, although § 253 of the civil code gives an enlarged or additional remedy to the tax-payer, yet if the tax or assessment is illegal, and it is shown that the principles of estoppel apply against the tax-payer, the jurisdiction of the court under the statute is to be exercised upon equitable principles, and the tax-payer, to succeed, must exhibit a case "in which, upon the merits, he is entitled to the equitable relief demanded." (*Steese v. Oviatt,* supra.) We now decide, upon the facts found, that the motion for a rehearing be granted; that the judgment of reversal heretofore entered be set aside, and that the judgment of the district court must be affirmed.

All the Justices concurring.