# OTTO KOCHTITZKY, Respondent, v. JOHN HERBST, Appellant.

### St. Louis Court of Appeals, November 7, 1911.

1. **DRAMSHOPS: License: Appeals.** A county court acts judicially in the matter of granting dramshop licenses, and from its judgment no appeal lies.

2. **———: ———: Certiorari.** Certiorari transfers to the reviewing court the record proper only, in proceedings for dramshop licenses, and if such record discloses all the essential jurisdictional facts, the judgment of the county court is conclusive.

3. **———: ———: Vacating License: Equity.** Where fraud is practiced in the procurement of a judgment of a county court granting a dramshop license, or where a county court, through intentional wrong or fraud of the judges, renders a judgment granting a dramshop license to one not entitled thereto, a court of equity may set such judgment aside, in a direct proceeding therefor; but such judgment may not be set aside for mere error or mistake of the county court, however gross.

4. **———: ———: Sufficiency of Petition: Section 7201 Construed: "Block" and "Square" Defined.** The words "block or square," used in section 7201, Revised Statutes 1909, which makes it unlawful for a county court to grant a license to keep a dramshop in a town or city containing 2000 inhabitants or more, until a majority of the tax-paying citizens and guardians of minors owning property in the "block or square" in which the dramshop is to be kept shall sign a petition asking for such license, are synonyms, and contemplate a portion of a city inclosed by streets, whether occupied by buildings or composed of vacant lots; and hence a petition for a dramshop license, which was not signed by a majority of tax-paying citizens owning property in the "block or square," inclosed by four streets, in which the dramshop was to be kept, but only signed by a majority of the tax-paying citizens, etc., owning property within a section bounded on two sides by open streets and on the other sides by streets neither dedicated nor open to the public but merely shown on a plat adopted by the city council, was insufficient.

5. **FRAUD: Character of Proof Required.** Fraud is never presumed, but must be proved; and though express and positive proof is not required in every instance, and though it may be established by circumstances and collateral facts affording

reasonable inferences to that effect, something more than mere conjecture or facts that give rise only to a suspicion of its existence must appear to sustain a judgment affirming it.

6. **DRAMSHOPS: License: Proceedings to Vacate License: Fraud: Sufficiency of Evidence:** The fact that a county court, composed of laymen, erroneously construed the words "block or square," as used in section 7201, Revised Statutes 1909, to mean a portion of a city, bounded as to two of its sides by streets appearing on a city plat but which had never been dedicated or opened to public use, instead of construing them to mean a tract inclosed by four streets, and erroneously held that a petition signed by a majority of the tax-paying citizens and guardians of minors owning property within such tract so bounded justified the issuance of a dramshop license, did not show fraud on the part of the court in granting the license warranting a court of equity in setting it aside, although a previous license, granted on the same theory, had been revoked by the county court.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED.

*Wilson Cramer* for appellant.

(1) The county court has exclusive jurisdiction over the subject of granting dramshop licenses, and its decision is conclusive. State ex rel. v. Fort, 107 Mo. App. 328. (2) What constitutes the "block or square" in which the dramshop is sought to be kept is a question of fact to be determined by the county court, and its finding on that issue is conclusive.

*I. R. Kelso* and *T. D. Hines* for respondent.

(1) The law is now well settled that from an order granting a dramshop license no appeal lies. That the writ of *certiorari* only takes up to the superior court for review the record, consisting of the petition, the application and order granting the license for review. And that the superior court simply inspects

that record, and if that record, taken altogether, sets out all the jurisdictional facts and is regular on its face, there can be no interference. State ex rel. Reider v. County Court, 45 Mo. App. 387; State ex rel. v. Fort, 107 Mo. App. 332; State ex rel. Harrah v. Canthorn, 40 Mo. App. 94. (2) In view of the legal definition of the word "block," there can be no doubt that the word is used in the dramshop act to mean a portion of the territory of a city which is surrounded by streets, opened and traversed. Streets which are visible and legal and opened up for public travel. Ottawa v. Barney, 10 Kan. 270, Caldwell v. Rupert, 10 Bush. (Ky.) 179. (3) The plaintiff claims, that on the broad ground of equitable jurisdiction in case where a wrong having been inflicted, was the denial of a right guaranteed by the law, chancery will afford proper and adequate relief, he is entitled to maintain this action. But there is the still broader ground that in cases of legal wrong, equity will afford relief, if the law does not afford adequate relief, just as readily as in cases where the law affords no relief at all. Buckharth v. Stevens, 117 Mo. App. 425.

NORTONI, J.—This is a suit in equity, the object and purpose of which is to set aside a judgment of the county court by which a dramshop license was granted to defendant. After hearing the evidence, the court found the issue for plaintiff and decreed the relief prayed for. From this judgment defendant prosecutes the appeal.

It is averred in the petition, and it appears in the case, that plaintiff is a property owner and, as such, an assessed, taxpaying citizen in the block in which defendant maintains his dramshop in Cape Girardeau. The suit proceeds on the theory plaintiff is an interested party whose legal rights have been invaded through the action of the county court in granting a dramshop license to defendant in such block, and the

Kochtitzky v. Herbst.

petition avers that he is without an adequate remedy at law, for the reason no appeal is allowed by statute from proceedings had in the county court under which dramshop licenses are granted and that the remedy by *certiorari* is of no avail here because the record of the county court in the dramshop proceeding is complete on its face.

About the middle of September, defendant filed with the county court of Cape Girardeau county his petition, signed by a number of taxpaying citizens owning property in the block or square in which his proposed dramshop was to be located, and prayed that such court issue to him a dramshop license thereon. The application was filed during the August term of the court, and was passed until the regular November term thereof, when it was favorably acted upon and the dramshop license issued to defendant in accordance with the statute. The petition prayed, and the court ordered, the dramshop license issued, permitting defendant to open and conduct a dramshop on Lot 51, Block 10, Range E in the city of Cape Girardeau, Missouri. Cape Girardeau is a city possessed of more than 2000 inhabitants and by virtue of the statute (Sec. 7201, R. S. 1909), the county court is authorized to grant a dramshop license upon the petition of a majority of the assessed, taxpaying citizens and guardians of minors owning property in the block or square in which the dramshop is to be kept. By an act of the General Assembly of Missouri, approved February, 1857, the boundaries of the city of Cape Girardeau were extended so as to include the territory where defendant's dramshop is situate, and in the year 1858 a new city map was drafted by authority showing the subdivision of certain out-lots within the extended boundaries into blocks, lots, streets, alleys, etc. This map was duly filed in the office of the recorder of that county September 6, 1858. Thereafter, in 1869, the city was re-surveyed by Nicholas Gonner, who pre-

sented to the council a map with the profile of the grades of the several streets included within the new limits, which was duly recorded in Plat Book No. 1 of Cape Girardeau, certified, etc. This map was adopted by the city council by Ordinance 209, approved on the 4th day of January, 1870, as correctly designating and marking out the streets, alleys, etc., therein indicated. This map, so revealed in the records of the county, covers a block of ground consisting of about twenty acres, which is bounded on the north by Washington avenue, on the east by Pacific street, on the south by Harmony street, also known as the Cape Girardeau and Jackson gravel road, and on the west by Henderson avenue. All of these streets are open, traveled, public thoroughfares, and the controversy here involved proceeds from the fact that certain cross streets designated in this map are not open, traveled streets but, in other words, are designated as such on paper only. This territory so bounded by the four open, public streets above named contains within it eleven city blocks or squares, according to the face of the map itself; that is to say, if all of the streets crossing this territory from Washington avenue on the north to Harmony street, or Cape Girardeau and Jackson gravel road, on the south, and from Pacific street on the east to Henderson avenue on the west were either dedicated streets or were open and traveled thoroughfares, eleven city blocks would be contained within the large square above mentioned. Though it appears eleven city blocks or squares are thus revealed on the recorded map or plat of the city of Cape Girardeau, the several cross streets therein mentioned have never been open, and there is naught in the record suggesting that those streets were ever dedicated by the owner of the land over which they are marked out. Lot 51, on which defendant was granted a license by the county court to open and maintain a dramshop, is parcel of the block of ground bounded on the east by Pacific

street, on the south by Harmony street, or the Cape
Girardeau and-Jackson gravel road, on the west by
Benton street and on the north by Bellevue street. Of
these streets so shown on the plat, Pacific street and
Harmony street, or Cape Girardeau and Jackson
gravel road, only are conceded to be open, public
thoroughfares which have been traveled for many
years. Benton street on the west of the block in which
is situate Lot 51 and Bellevue street on the north of
this same block are not open streets and it does not
appear that they were ever dedicated as streets by
the owner of the land, though they are shown on the
plat as streets of the city of Cape Girardeau. Because
of this fact, the two streets last mentioned are spoken
of in the evidence as "paper streets" only. If those
two streets—that is Benton street and Bellevue street
—are in fact streets of the city, then there can be no
doubt the county court properly granted the dramshop
license to defendant; but if they are not streets, then
probably the block or square in which defendant's
dramshop was situated consists in that larger portion
of territory (about twenty acres), bounded on the
north by Washington avenue, on the east by Pacific
street, on the south by Harmony street, and on the
west by Henderson avenue; which large square con-
tains, according to the map, eleven city blocks subdi-
vided into lots adjacent to numerous streets and al-
leys which appear on the map. In the month of July,
defendant filed an application in the county court for
a license to open and conduct a dramshop on the same
Lot 51 in Block 10, above mentioned, and afterwards,
on the 6th day of August, during the August term of
the court, it was acted upon favorably and the license
prayed for granted on the theory that his petition con-
tained a majority of the assessed, taxpaying citizens
and guardians of minors owning property in the block
or square of which Lot 51 is parcel. After the license
was so granted on this application, but before it was

actually issued, plaintiff and others protested thereat and induced the county court to set such order aside. The order of August 6th was set aside by the county court, it is said, because the members of the court were of opinion that the license was granted inadvertently, for the reason that the block or square of which Lot 51 was parcel was not a block or square within the meaning of the law. In other words, the court was of opinion that, because Benton street on the west of that block and Bellevue street on the north of it were not open, traveled thoroughfares, Block 10, of which Lot 51 was parcel, was not a block or square within the meaning of the dramshop law. Subsequently, in September, defendant filed his second application for a license to conduct a dramshop on Lot 51 of the same block and no remonstrance to this license whatever was filed. Thereafter, at its November term, the county court considered the matter and determined such Block 10, though bounded on two sides only by open public streets, and on the north and west by streets appearing on the plat, but not open, to be a block or square within the meaning of the law. On so determining this question, the application for a dramshop license was found to be sufficient in point of qualified signers, and sustained. The court entered its judgment accordingly, which recites all of the facts essential to be found antecedent to granting such a license. Defendant's dramshop license was granted and he opened the dramshop on such Lot 51, Block 10. Afterwards, this suit was instituted in the circuit court, to the end of setting aside the judgment of the county court which granted the license and to the end of canceling the license and restraining defendant from maintaining the dramshop on such lot.

According to the averments of the petition, no charge whatever is laid against defendant, but it is

alleged the county court granted the license through fraud and misfeasance on its part. The grounds upon which the relief is sought may be ascertained by a perusal of the material part of that pleading, which is as follows:

"The said court desiring to favor said Herbst, knowingly, willfully, fraudulently and misfeasantly took cognizance of said application and petition, and illegally granted the said Herbst the dramshop license, in the following unlawful but original and unique manner.

"The said court formed an imaginary block surrounded on two sides by imaginary streets, which imaginary block comprised only about one-fourth, or one-fifth of the whole area or territory of the said block as hereinbefore described. And the court in determining whether a majority of the assessed, tax-paying citizens had signed said dramshop petition, counted only those who owned property in the said imaginary block which was in part surrounded by two imaginary streets, but the pleader is unable to give the names of the two said streets for the reason that said streets are fanciful and mere figments of the imagination of the said court. But the said streets so evolved from fancy, answered every purpose of their creation, fully as well as real boulevards could have done, in that they with Pacific street, and the Cape Girardeau and Jackson gravel road, formed a block in which by counting the illegal signers to said petition, the said applicant had a majority and enabled said court to put its stamp of approval upon said petition, and grant defendant a license to keep a dramshop which he has established, and now maintains. That said court refused to count any and all assessed, taxpaying citizens who owned property in said block outside of the little imaginary block so formed as aforesaid.

"That all the aforesaid novel and remarkable acts of said court in that behalf, were done knowingly and

wrongfully, and for the purpose of 'counting a majority' in favor of said dramshop petition. That the said court thereupon willfully and wrongfully entered of record its judgment showing its jurisdiction of said matter, and all essential findings for the purpose of conferring upon it jurisdiction in that matter, and found by the process and computation aforesaid, and entered of record its finding that said petition contained the signatures of a majority of the assessed, taxpaying citizens and guardians of minors owning property in the block or square in which defendant's dramshop was to be kept.

"That all of the acts, findings and orders of said county court were and are illegal and in violation of the law and the rights of this plaintiff.

"That the said court by making and entering of record matters and finding in that behalf, left plaintiff without any remedy at law by which to review and correct the errors committed, and the wrongs done aforesaid. That said acts of said court in approving said petition, in the manner aforesaid, and the ordering of said license was an act of misfeasance in office, wholly without authority of law and void, and should be set aside and for naught held.

"That neither an appeal nor writ of error will lie from said proceedings, and that said court did willfully, wrongfully and on purpose, with the intent of preventing the same, so conduct, direct and record the proceedings had by them in said matter and cause, so as to prevent a review thereof, by *certiorari*, and thereby render such proceedings unavailing.

"That said dramshop conducted by defendant under his license aforesaid, by reason of its close proximity to plaintiff's home and property situate in said block as aforesaid, damages plaintiff, injures his said property and the property of others in the same block similarly situated, and is a constant and continual source of annoyance, discomfort and loss to him and to them.

"Wherefore, the premises considered, plaintiff prays that said judgment of said county court granting said license, and its order approving said petition, be cancelled, set aside and for naught held, and the said dramshop license so granted to defendant as aforesaid be annulled and cancelled, and the defendant be enjoined and restrained from maintaining a dramshop at said place and block under the license procured as aforesaid."

The county court acts judicially in the matter of granting dramshop licenses, and from its judgment no appeal is provided by the statutes. The writ of *certiorari* transfers to the superior court the record proper only in such proceedings, and if such record discloses all of the essential jurisdictional facts which the statute imposes, the duty upon the county court to ascertain and determine its judgment in respect of such matters is conclusive, except as to a direct proceeding to set it aside. [Burkharth v. Stephens, 117 Mo. App. 425, 94 S. W. 720; State ex rel. v. Fort, 107 Mo. App. 328, 81 S. W. 476.] The record of the county court touching the matter of granting the dramshop license to defendant is complete in all respects, and reveals that that court found as a fact his petition was signed by a majority of the taxpaying citizens and guardians of minors owning property in the block or square, of which Lot 51, where the dramshop is situate, is parcel. But this is immaterial here, except for the purpose of disclosing that no adequate remedy at law by means of the writ of *certiorari* exists; and it was therefore permissible for plaintiff to address himself to a court of equity.

No one can doubt the power or duty of a court of equity in a direct proceeding for that purpose to set aside and vacate a judgment obtained through fraud in the actual procurement of the judgment. The principle is well established and frequently acted upon. [Baldwin v. Davidson, 139 Mo. 118, 40 S. W. 765; Ir-

vine v. Leyh, 102 Mo. 200, 14 S. W. 715, 16 S. W. 10; Black on Judgment (2 Ed.), sec. 321.] It is a proper proceeding, too, where the county court, through intentional wrong or fraud of the judges knowingly enters its judgment granting a dramshop license to one not entitled thereto. [See Burkharth v. Stephens, 117 Mo. App. 425, 94 S. W. 720.] But such judgment may not be set aside for mere error or mistake of the county court, however gross. Where the judgment is sought to be vacated for fraud as here, such fraud must be established; that is to say, it must be shown that the county court acted intentionally with a fraudulent view of accomplishing the wrong charged. As before stated, a mere error or mistake of judgment will not suffice. [Burkharth v. Stephens, 117 Mo. App. 425, 437, 94 S. W. 720.]

Though defendant's petition was signed by a majority of the taxpaying citizens and guardians of minors owning property in the block of ground bounded by Pacific street on the east and Harmony street on the south, which are open thoroughfares, and Benton street on the west and Bellevue street on the north, which exist on the plat only, it appears beyond question that it was not signed by a majority of such taxpayers in the larger square bounded by the four open streets above mentioned. The statute (Sec. 7201, R. S. 1909) provides that it shall not be lawful for the county court to grant a license to keep a dramshop in a town or city containing 2000 inhabitants or more until a majority of the taxpaying citizens and guardians of minors owning property in the block or square in which the dramshop is to be kept shall sign a petition asking for such license to keep a dramshop in such block or square. There can be no doubt that the statute employs the terms "block" or "square" as synonymous in their import, and that it contemplates a portion of the city inclosed by streets, whether occupied by buildings or composed of vacant lots. It is to be conceded that a block or

square is a portion of ground in a town or city sur-
rounded by streets. [City of Ottawa v. Barney, 10
Kan. 270, 278.] But though such be true, in order to
establish the charge of fraud on the part of the county
court, something more should appear than that it ac-
cepted the lesser block surrounded by two open streets
and two "paper streets" on the official plat of the city
as a block or square within the meaning of the statute,
instead of accepting the larger one which contained
about twenty acres; for such is entirely consistent
with the view that it was but a mistake or error of
judgment. It is elementary that fraud is never pre-
sumed but must be proved, for it is a grave thing to
even suggest it. [1 Greenleaf on Evidence, sec. 80.]
By the principles of the common law alone, such is the
rule, for it is always presumed that persons conduct
themselves in accordance with the precepts of good
morals and in good faith; and especially is this true
with respect to public officers in the discharge of their
official duties, for the presumption of right conduct
always attends such acts. Though express and positive
proof of fraud is not required in every instance, and
though it may be established by circumstances and
collateral facts affording reasonable inferences to that
effect, something more than mere conjecture must ap-
pear in order to support the charge. Facts which
give rise only to a suspicion of its existence are in-
sufficient to sustain a judgment affirming it. [Kilpat-
rick v. Wiley, 197 Mo. 123, 95 S. W. 213; Waddingham's
Exrs. v. Loker, 44 Mo. 132; Priest v. Way, 87 Mo. 16;
South Missouri, etc. Lumber Co. v. Crommer, 202 Mo.
504, 101 S. W. 22.] There are no collateral facts or
circumstances relied upon here to support the charge
of fraud against the county court, and no charge of
fraud whatever is laid against defendant. Indeed,
the only charge is that against the county court, but
it proceeds as though defendant received the benefits.
The entire proof is that the county court accepted the

lesser block or square, of which Lot 51 was a parcel and which block or square was bounded by two open streets and two "paper streets," as a block or square within the meaning of the statute and, so treating with the matter, it ascertained that the petition for license was signed by a majority of the taxpaying citizens and guardians of minors owning property in such block or square, and granted the license accordingly. The suggestion is, the court should have treated with the larger square instead of the smaller one.

It is argued that because the county court granted a license to defendant on the same theory on the 6th day of August theretofore and subsequently set its order aside as inadvertently made, the case should be treated as though it knew all the facts and intentionally granted the second license with a purpose to commit a fraud upon the law. We do not accept this view, for it appears that Bellevue street on the north and Benton street on the west of this block, though not open and traveled thoroughfares, were shown upon the official map of the city as streets, and the county judges no doubt, upon further consideration, considered and treated them as such in good faith. The judgment finally given is entirely consistent with honest error or a mistaken view. We may take judicial notice of the fact that the Constitution and statutes do not require the judges of the county court to be learned in the law and it is a matter of common knowledge that they are usually business men and farmers not educated according to the intricacies of that profession. Indeed, the proof in this case reveals that none of the members of the county court were lawyers, and it goes without saying that the question as to whether or not the two unopen but platted streets were in fact streets of the city was in all probability quite beyond their ken. Indeed, it may be that lawyers would entertain different opinions with respect to that matter, after consulting a plat which had been

adopted by the city council as official and treated as such since 1869, though the streets were not actually dedicated by the landowners. As to this, it should be said that there is nothing in the case tending to prove that the county court knew at the time the license was granted or at any time theretofore that the two streets, Bellevue and Benton, had never been dedicated to the public use, though it does appear they knew such streets were not open and traveled. The proof is conclusive, however, that the plat of Cape Girardeau, which was before them, showed such streets to have been adopted by ordinance in 1870. The matter is one about which honest men, acting in good faith, may so easily err or commit a mistake that the proof scarcely suggests even a conjecture or suspicion of fraudulent intent. It is certain that the judgment of the county court is not to be set aside for mere mistake or error of judgment on the part of the court, and the proof is insufficient to support the finding of fraud. Other questions discussed in the argument are not suggested by the allegations of the bill and will not be noticed. The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.